FOSKETT v FOSKETT

Docket No. 230222. Submitted February 5, 2001, at Detroit. Decided July 24, 2001, at 9:00 A.M.

Sonya Foskett was granted a judgment of divorce from Louis Foskett in the Tuscola Circuit Court, Family Division. The judgment granted the parties joint legal custody of their three minor children, and the plaintiff was granted physical custody. The plaintiff thereafter petitioned to reduce the parties' orally modified parenting-time agreement to an order, to review the issue of the defendant's child support obligation, and to clarify the issue of which party could claim the children as dependents for tax purposes. The defendant responded by petitioning for a change of custody. A hearing referee recommended that the plaintiff retain physical custody and that the parties' liberal parenting-time agreement be followed. The defendant sought a review, and the court, W. Wallace Kent, Jr., J., conducted a short evidentiary hearing and an in camera interview of the children. No record was made regarding the substance of the interview. The court issued an opinion and order granting the defendant's request for a change of custody, substantially relying on the unrecorded information garnered in the interview with the children to make its ultimate decision. The plaintiff appealed.

The Court of Appeals held:

1. The trial court abused its discretion in finding that no custodial environment existed with either parent. The record supports a finding that an established custodial environment existed with both parents. As a result, the court failed to apply the appropriate clear and convincing evidence standard with regard to the issue.

2. There must be a modicum of extraneous testimony on the record that would, at the very least, support a reasonable inference attesting to the trustworthiness and indeed the veracity of the information obtained through an in camera interview of children to provide for meaningful appellate review where, as in this case, the in camera interview strongly influences, if not completely determines, the court's factual findings regarding all the best interest factors.

3. Where, as here, a trial court fails to consider child custody issues in accordance with the mandates set forth in MCL 722.23 and make reviewable findings of fact, the appropriate remedy is to remand for a new child custody hearing.

Reversed and remanded.

1. DIVORCE — CHILD CUSTODY — EVIDENCE — IN CAMERA INTERVIEWS.

There must be a modicum of extraneous testimony on the record that would, at the least, support a reasonable inference attesting to the trustworthiness and indeed the veracity of the information obtained through a court's in camera interview of children involved in a custody dispute where the court relies significantly on information obtained through the interview to resolve factual conflicts relative to any of the statutory best interests of the child factors (MCL 722.23).

2. DIVORCE — CHILD CUSTODY — BEST INTERESTS OF THE CHILD.

A trial court in a child custody dispute involving siblings must apply all the statutory best interests of the child factors to each individual child to arrive at a decision that serves each child's best interests (MCL 722.23).

*Daniel D. Bremer*, for the plaintiff.

Before: HOOD, P.J., and DOCTOROFF and K. F. KELLY, JJ.

K. F. KELLY, J. Plaintiff appeals as of right from an order changing physical custody of the parties' minor children to defendant. We reverse and remand.

I. BASIC FACTS AND PROCEDURAL HISTORY

The parties were divorced in 1996. The judgment of divorce granted joint legal custody of the three minor children to both parties, with plaintiff retaining physical custody. Pursuant to the judgment, defendant had parenting time from Tuesday evening until Thursday evening each week, as well as certain periods in the summer. This parenting time schedule was orally modified to accommodate changes in the parties' schedules. Although the dates and times of the

parenting schedule changed by mutual agreement of the parties, the amount of time defendant spent with the children remained essentially unaffected. A review of the record indicates that despite their personal differences, these parties were able to work together for the greater good of their children. Both parents are actively involved with the children's schooling, extracurricular activities, and meeting their material and medical needs. Until the instant litigation, both parties cooperated, actively facilitating and encouraging a close and continuing relationship between the children and the other parent.[1]

On April 4, 2000, plaintiff filed a petition with the family division of the circuit court seeking (1) to reduce the oral parenting time agreement to an order, (2) a review of the child support obligation of defendant, and (3) to clarify which party could claim the children as dependents for tax purposes. In response, defendant filed a petition for a change of custody.

On May 18, 2000, a referee held a hearing on both petitions. At the hearing, the referee found that plaintiff had an established custodial environment with the children and therefore held defendant to the more exacting clear and convincing evidentiary standard. After the hearing, the referee concluded that defendant failed to meet his burden of proof and recommended that plaintiff retain physical custody and defendant have liberal parenting time consistent with the parties' respective schedules.

Defendant sought review de novo of the referee's recommendation and the court conducted a short evidentiary hearing during which defendant argued that

---

[1] In fact, the trial court referred to the parents as "models of conduct" in this regard.

plaintiff was verbally abusive. During the evidentiary hearing, plaintiff, together with all the witnesses called by defendant to testify at the hearing, denied any and all allegations of physical or verbal abuse on plaintiff's part.

After the conclusion of testimony, the court arranged to interview the children in camera.[2] The court allowed the parties the opportunity to present questions that it would ask the children and indicated that it would also ask the children about plaintiff's drinking habits, alleged verbal abuse, the frequency of the presence of the police at the home, as well as the source of clothing for the children. The trial court did not make any record whatsoever, by transcript or judicial summary, relative to the substance of the in camera interview with the three minor children. Accordingly, none is available for our review. After the evidentiary hearing and after the trial court conducted its in camera interview with the children, the court issued a written opinion granting defendant's request for a change of custody. Comparing the evidence on the record and the trial court's written opinion, it is evident to this Court that the trial court substantially relied on the unrecorded information garnered from the in camera interview with the children to make its ultimate decision. Plaintiff appeals as of right. We reverse and remand to the trial court for further proceedings consistent with this opinion.

## II. ESTABLISHED CUSTODIAL ENVIRONMENT

There are three different standards of review applicable to child custody cases. The clear legal error

---

[2] At the time of the interview, the children were thirteen, eleven, and eight years old.

standard applies where the trial court errs in its choice, interpretation, or application of the existing law. *LaFleche v Ybarra*, 242 Mich App 692, 695; 619 NW2d 738 (2000).[3] Findings of fact are reviewed pursuant to the great weight of the evidence standard. In accord with that standard, this Court will sustain the trial court's factual findings unless "the evidence clearly preponderates in the opposite direction." *Id.* Discretionary rulings are reviewed for an abuse of discretion, including a trial court's determination on the issue of custody. *Id.*

MCL 722.27(1)(c) provides for modification of a custody order on "proper cause shown" or "[a] change of circumstances." Therefore, when confronted with a petition to change custody, a trial court must first determine the appropriate burden of proof to place on the party seeking the change. To discern the proper burden, the trial court's initial inquiry is whether an established custodial environment exists. *LaFleche, supra* at 695-696. MCL 722.27(1)(c) provides, in relevant part:

> The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

---

[3] See also *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000); *McCain v McCain*, 229 Mich App 123, 129; 580 NW2d 485 (1998).

Ever mindful that our Legislature's intent underlying the Child Custody Act was to "minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an 'established custodial environment,' *except in the most compelling cases,*" whether a custodial environment has been established is an intense factual inquiry. *Baker v Baker*, 411 Mich 567, 577; 309 NW2d 532 (1981) (emphasis added); see also *Ireland v Smith*, 214 Mich App 235; 542 NW2d 344 (1995).

This pivotal legislative mandate is only served when trial courts apply the correct evidentiary standard to issues relating to child custody. If the trial court finds that an established custodial environment exists, then the trial court can change custody only if the party bearing the burden presents clear and convincing evidence that the change serves the best interests of the child. *Phillips v Jordan*, 241 Mich App 17; 614 NW2d 183 (2000) (citing *Rummelt v Anderson*, 196 Mich App 491, 494; 493 NW2d 434 [1992]). This higher standard also applies when there is an established custodial environment with both parents. *Jack v Jack*, 239 Mich App 668; 610 NW2d 231 (2000).[4] On the contrary, if the court finds that no

---

[4] In *Jack*, the trial court failed to make a finding regarding the existence of an established custodial environment. This Court recognized that remand was required unless there was sufficient evidence on the record " 'for this Court to make its own determination of this issue by de novo review.' " *Id.* at 670 (citation omitted). On review de novo of the record, this Court ruled that the children looked to *both* parents equally and that, as a result, an established custodial environment existed with *both* parents. Because the trial court in *Jack* did not find that both parents established a custodial environment, this Court held that the trial court committed clear legal error and remanded the case so that the trial court could determine whether clear and convincing evidence existed to warrant a change in custody.

established custodial environment exists, then the court may change custody if the party bearing the burden proves by a preponderance of the evidence that the change serves the child's best interests. *LaFleche, supra* (citing *Mann v Mann,* 190 Mich App 526, 531; 476 NW2d 439 [1991].

In the case at bar, the trial court found that no custodial environment existed, stating:

> It is the court's *impression* . . . that because of problems in [the] mother's home that *the children have looked to the father for guidance, discipline, and necessities of life with the same frequency as they looked to the mother for such nurture and support.* Therefore, the court finds that by the conduct of the parties, no established custodial environment exists. Therefore the burden of proof for [the] father is by a preponderance of the evidence, not by clear and convincing evidence to prove that the best interests of the children are served by a change of custody. [Emphasis added.]

First, we note that by its own admission, the trial court merely formed an "impression" regarding the alleged problems in the mother's home. This Court is unable to discern from whence the trial court's "impression" came. A review of the record establishes nothing more than allegations of verbal and physical abuse within the mother's home with the exception of one isolated incident. The record is clear that on *one* occasion, plaintiff and her boyfriend apparently had a verbal altercation to which the police responded. However, we note further that despite police involvement, no charges relative to this incident were instituted.

Second, the trial court's opinion is internally inconsistent. The trial court found that the children looked

to both their mother and father, with the same frequency, for guidance, discipline, and the necessities of life, yet curiously declined to find an established custodial environment in *either* household. The trial court did not further expound on or articulate its reasons for reaching this particular conclusion.

Because the existence of a custodial environment is a factual inquiry, the great weight of the evidence standard applies. The appropriate inquiry, therefore, is whether the evidence on which the trial court determined that neither parent established a custodial environment "clearly preponderates in the opposite direction." *Ireland, supra* at 242, thus rendering the trial court's ultimate decision regarding custody an abuse of discretion. *LaFleche, supra* at 695. We find that it does.

In the case sub judice, a review de novo of the record amply supports the existence of a custodial environment with both parents. Both parties contributed to the financial needs of the children and were active participants in the children's school and extracurricular activities. The children were doing well in school and sought support from both parents.

A careful review of the record supports an established custodial environment with both parents. Thus, *neither* plaintiff's nor defendant's established custodial environment may be disrupted except on a showing, by clear and convincing evidence, that such a disruption is in the children's best interests. *Jack, supra.* The trial court thus abused its discretion on two levels. First, the trial court failed to find an established custodial environment in and through both homes. Second, the trial court failed to apply the appropriate evidentiary standard in accord therewith.

### III. BEST INTERESTS FACTORS

To determine the best interests of the children in child custody cases, a trial court must consider all the factors delineated in MCL 722.23(a)-(l) applying the proper burden of proof. A trial court must consider and explicitly state its findings and conclusions with respect to each of these factors. *Bowers v Bowers,* 190 Mich App 51, 55; 475 NW2d 394 (1991) (citing *Daniels v Daniels,* 165 Mich App 726, 730; 418 NW2d 924 [1988]). As this Court judiciously observed two decades ago:

> A child custody determination is much more difficult and subtle than an arithmetical computation of factors. It is one of the most demanding undertakings of a trial judge, one in which he must not only listen to what is said to him and observe all that happens before him, but a task requiring him to discern and feel the climate and chemistry of the relationships between children and parents. This is an inquiry in which the court hopes to hear not only the words but the music of the various relationships. [*Dempsey v Dempsey,* 96 Mich App 276, 289; 292 NW2d 549 (1980).]

The most difficult aspect of the case at bar is that almost all the trial court's factual findings are not reviewable. Indeed, after the trial court spoke with the children in camera, the trial court suddenly concluded that the mother was "cursed with a very volatile temper" and that the mother is "verbally abusive." A review of the trial court's written opinion is laden with referrals to the mother's "nasty tempter" or otherwise volatile behavior. Most striking however, is the trial court's conclusion that the mother has "a mental problem" and that it "appears" that domestic violence plagues the mother's home environment.

The only conceivable explanation to account for the stark difference between the evidence presented on the record that amounted to nothing more than mere *allegations* of the mother's violent conduct and the trial court's *conclusions* that the mother has a "volatile," "nasty" temper and further exhibits signs of mental illness, is the intervening in camera interview with the children that was not, in any way, made part of the reviewable record.[5] Thus, even a most cursory review of the existing record reveals that the trial court's in camera interview strongly influenced, if not *completely* determined, its factual findings on all the best interests factors[6]. However, to maintain a certain level of judicial integrity, and to provide for meaningful appellate review, there must be a modicum of extraneous testimony on the record that would, at the very least, support a reasonable inference attesting to the trustworthiness and indeed the veracity of the information obtained through the in camera interview with the children.

If a trial court relies significantly on information obtained through the in camera interview to resolve factual conflicts relative to any of the other best inter-

---

[5] Having a reviewable record of the in camera interview is even more critical when considering the number and ages of the children. Obviously, a statement by a thirteen-year-old child is evaluated by a different standard that that of an eight-year-old child, particularly in light of developmental and emotional maturity.

[6] Precedent established by this Court recognizes that when determining the best interests of the child in a custody dispute, a trial court's in camera interview may extend to any matter relevant to a trial court's decision. *Hilliard v Schmidt*, 231 Mich App 316, 320-321; 586 NW2d 263 (1998). However, the Court in *Molloy v Molloy*, 243 Mich App 595; 628 NW2d 587 (2000), criticized this aspect of the *Hilliard* decision. Accordingly, on January 12, 2001, a conflict panel was convened by order of Chief Judge RICHARD BANDSTRA to resolve this issue and the *Molloy* opinion was vacated in part. 243 Mich App 801 (2001).

ests factors and fails to place that information on the record, then the trial court effectively deprives this Court of a complete factual record on which to impose the requisite evidentiary standard necessary to ensure that the trial court made a sound determination regarding custody. Indeed, decisions that will profoundly affect the lives and well-being of children cannot be left to little more than pure chance. These critical decisions must be subject to meaningful appellate review.

We further note that the trial court entered an order changing the custody of all three children. Indeed, this Court applauds efforts to ensure that siblings remain in the same household. *Wiechmann v Wiechmann*, 212 Mich App 436, 439; 538 NW2d 57 (1995). As we stated in *Wiechmann*, "[w]e believe that *in most cases* it will be in the best interests of each child to keep brothers and sisters together. However, if keeping the children together is contrary to the best interests of an *individual* child, the best interests of *that* child will control." *Id.* at 440. (Emphasis added.) Incumbent on the trial court therefore, is the duty to apply all the statutory best interests factors to each individual child. To fully discharge this duty, and arrive at a decision that serves a particular child's best interests, trial courts must recognize and appreciate that implicit in the best interests factors themselves is the underlying notion that as children mature their needs change. And, as a child progresses through the different life stages, what they need from each parent necessarily evolves therewith. Thus, what may be in the "best interests" of an eight-year-old child may materially differ from the "best interests" of that child's thirteen-year-old sibling.

Accordingly, the best interests factors must be fluid enough in their application to accommodate these differences. Indeed, unyielding judicial adherence to the notion that a child's best interests requires that siblings remain in the same household, may very well, in some cases, create a judicial straightjacket that brings an individual child's personal growth to a screeching halt.

In this case, evident from a review of the limited record is the eldest child's representation that she desires to live with her father. This child's preference was acknowledged and not contested by plaintiff. Perhaps at this particular developmental juncture, she would derive a greater benefit from her father's home. According to the statutory factors, it may even be in her best interests to reside with her father. That does not, in any way, suggest that the other two children would similarly benefit. On the limited record available, however, the trial court's factual findings evade meaningful review and we are thus unable to say this with any reasonable degree of certainty. Nevertheless, appreciation and evaluation of each individual child in light of the statutory best interests factors is crucial to making sound judicial decisions in this exceptionally delicate area of domestic law.

Where a trial court fails to consider custody issues in accordance with the mandates set forth in MCL 722.23 "and make reviewable findings of fact, the proper remedy is to remand for a new child custody hearing." *Bowers, supra* at 56. The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient. MCR 2.517(A)(2); *Fletcher v Fletcher*, 447

Mich 871, 883; 526 NW2d 889 (1994). In this case, although the trial court set forth its findings, those findings were nevertheless not independently supported or otherwise corroborated by the evidence on the record and thus amenable to appellate review. In the absence of a reviewable record, we are unable to determine whether there is any support for the trial court's conclusions. A trial court has discretion to be sure, but it does not and cannot have unbridled discretion. The trial court's ultimate decision must comport with the great weight of the evidence. *Id.*

The trial court's finding regarding established custodial environment was against the great weight of the evidence. Further, for the reasons stated herein, we also find that the trial court abused its discretion by changing the children's custodial environment without the attendant clear and convincing evidence presented to justify the substance of the trial court's ultimate decision and disposition.

Reversed and remanded for further proceedings consistent with this opinion[7]. We do not retain jurisdiction.

Reversed and remanded.

---

[7] Because we are remanding this case for further proceedings regarding custody, we do not address the child support and tax deduction issues.