# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY ELY ANDARY,

Plaintiff/Counter-Defendant-
Appellee/Cross-Appellant,

UNPUBLISHED
February 10, 2015

v

No. 319299
Cheboygan Circuit Court
LC No. 11-009300-DM

CAROL S. ANDARY,

Defendant/Counter-Plaintiff-
Appellant/Cross-Appellee.

Before: SAAD, P.J., and OWENS and K.F. KELLY, JJ.

PER CURIAM.

Defendant, Carol Andary, appeals as of right from a June 17, 2013 judgment of divorce entered by the trial court. Defendant challenges the trial court's decision to award joint custody of the parties' two minor children, its disposition of marital property, and the arbitrator's opinion and award. Plaintiff, Anthony Andary, cross-appeals, challenging the trial court's amendments to the marital property division. For the reasons discussed below, we affirm.

## I. ESTABLISHED CUSTODIAL ENVIRONMENT

First, defendant challenges the trial court's finding that an established custodial environment existed with both parents. Defendant does not argue that an established custodial environment only existed with her. She simply asserts that the trial court's finding was against the great weight of the evidence.

"To expedite the resolution of a child custody dispute by prompt adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Under the great weight of the evidence standard, "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (quotations and citation omitted). "An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "Clear legal error

-1-

occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010).

"Whether an established custodial environment exists is a question of fact that we must affirm unless the trial court's finding is against the great weight of the evidence." *Berger*, 277 Mich App at 706. An established custodial environment is one in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

> An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger*, 277 Mich App at 706.]

"The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c).

"An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Berger*, 277 Mich App at 707. The record supports the trial court's factual findings. The trial court took into consideration the concerns raised by defendant on appeal, including plaintiff's alienating behavior and the parties' different parenting styles. But these concerns alone do not change the fact that the children rely on both parents for guidance, discipline, the necessities of life, and parental comfort. While it is true that the children have more of a friendship with plaintiff due to his permissive parenting and fight more with defendant due to her authoritative parenting, the children still live with both parties, who each provide the children with the necessities of life. Defendant is the main disciplinarian; the children look to plaintiff more for parental comfort. Both parties provide guidance to the children in their own way and both are involved in the children's lives. Therefore, defendant has failed to show how the trial court's finding that an established custodial environment existed with both parents was against the great weight of the evidence.

## II. BEST INTEREST FACTORS

Next, defendant argues that the trial court's findings and conclusions regarding the best interest factors were against the great weight of the evidence. "Above all, custody disputes are to be resolved in the child's best interests. Generally, a trial court determines the best interests of the child by weighing the twelve statutory factors outlined in MCL 722.23." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001) (internal citation omitted).

Defendant argues that the trial court's factual findings were "cursory and incomplete" and that it failed to consider relevant evidence. The trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre v MacIntyre (On Remand)*, 267

Mich App 449, 452; 705 NW2d 144 (2005) (citations omitted). "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger*, 277 Mich App at 705.

Further, in divorce proceedings involving custody of children, "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient, without overelaboration of detail or particularization of facts." MCR 2.517(A)(2); MCR 3.210(D). The trial court need not elaborate on its findings. And brief findings, such as the ones in this case, may be sufficient as long as they are "independently supported or otherwise corroborated by the evidence on the record and thus amenable to appellate review." *Foskett v Foskett*, 247 Mich App 1, 13; 634 NW2d 363 (2001).

With regard to factor (a), the "love, affection, and other emotional ties existing between the parties involved and the child," the trial court determined that this factor favored plaintiff. Defendant argues that the trial court failed to consider plaintiff's alienating behavior, which directly affects this factor. However, the record shows that the children received more affection from plaintiff and that he was their "principle of emotional [sic] support," but this was not necessarily because of his alienating behavior. The court-appointed expert noted that plaintiff is the more nurturing parent, and while this is partly due to this permissive parenting style, it is also apparent that he was a more affectionate person with the children. Further, the trial court did address plaintiff's alienating behavior when it discussed factor (j), and it is clear it considered such behavior in its ultimate decision.

Defendant also argues that the trial court erred by finding that factor (b) did not favor either party. Defendant argues that plaintiff did not have the capacity and disposition to give the children love, affection, and guidance. First, defendant notes the fact that plaintiff discounted the children's dangerous behavior. The court-appointed expert appeared to have contributed her opinion that plaintiff discounted the children's behavior due to his permissive parenting style. The record shows that plaintiff was supportive of the children's counseling, that he took suggestions regarding their care from the therapist, and that the children's behavior was improving. While plaintiff has a different approach to discipline then defendant has, that does not show that he does not have the capacity and disposition to provide the children with love, affection, and guidance.

Second, defendant points to plaintiff's anger issues and his tendency to blame others for his problems, but also admits in her brief that both parties have anger issues. Defendant seems to argue that her anger is of less significance than plaintiff's anger. This is a distinction without a difference, and does not show that the evidence clearly preponderates in the opposite direction of the trial court's finding on factor (b).

Third, defendant points to plaintiff's alienating behaviors. As the trial court noted, whether intentional or not, plaintiff did behave in ways that undercut defendant's authority. Despite this behavior, the court-appointed expert still found that plaintiff was the more nurturing parent, which was also supported by testimony from plaintiff's aunt and sister, and the family's former nanny. While there was certainly an issue with plaintiff's alienating behavior, the record also shows that the parties still attended the children's school activities together, and plaintiff made it clear that he wants defendant involved in the children's lives. Defendant relies heavily

on plaintiff's alienating behavior throughout her brief, but the record does not show that the behavior was at the level defendant claims. This does not appear to be a situation where one party completely alienates the other; rather, it appears that most of plaintiff's behavior is driven by the difference in parenting styles.

Fourth, defendant points to plaintiff's use of alcohol and the personal protection order (PPO) she filed against him in 2008 before the divorce proceedings began. Although plaintiff was previously cited for operating while intoxicated, the court-appointed expert testified that she "never had any sense" that plaintiff "has a current drinking problem" and that plaintiff's treating therapist at the time was unaware of any substance abuse problems. With regard to the PPO, it did not prohibit defendant and plaintiff from having contact at their joint law office, and defendant agreed to terminate the PPO. Further, the court-appointed expert testified that the children stated that there was mutual pushing and shoving, and although defendant claimed that there were other acts of domestic violence those allegations were never corroborated.

Fifth, defendant points to the court-appointed expert's testimony that there was an enmeshed relationship between plaintiff and one of the children. The expert testified that one of the children "moons over her father," but was very clear that it was not in a sexual way, and because it was caught relatively early, it was not yet "a really bad problem."

Finally, defendant points to the fact that plaintiff exposed the children to the divorce proceeding by telling them about the divorce and by leaving the PPO in plain view. This relates back to plaintiff's alienating behavior. While plaintiff's behavior is certainly questionable, the record still supports the trial court's conclusion that plaintiff was more nurturing and "more free with the affection" than defendant.

In sum, defendant has not shown how these issues affect plaintiff's capacity and disposition to provide the children with love, affection, and guidance under factor (b). The record makes clear that both parties have their issues, which the trial court considered, and while defendant attempts to make plaintiff's issues appear more significant, the evidence does not clearly preponderate in the opposite direction. The record shows that both parties equally love and care for the children and are actively involved in their lives.

With regard to factor (c), "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs," defendant argues that the trial court erred by finding this factor neutral because she is more apt to seek counseling for the children and plaintiff discounts their behavior. The only citation defendant makes to the record to support this claim is the court-appointed expert's report noting that plaintiff had disagreed about the children's therapy and possible medication. But this is not enough to show that the trial court's finding clearly preponderates in the opposite direction, particularly where the record shows that plaintiff was involved in the children's therapy and was agreeable to it continuing.

Defendant also asserts that factor (c) should favor her because since the trial, plaintiff has failed to pay for the shared expenses of the marital home and children. She cites a June 17, 2013 order for shared expenses. However, defendant fails to recognize that this order was issued

-4-

almost three years after the custody trial and the trial court's decision regarding custody. At the time the trial court issued its decision, there was no question that both the parties had successful careers and could provide the children with food and clothing.

Defendant next argues that the trial court erred by finding that factor (d), "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," was neutral. Defendant argues that plaintiff's alienating behavior, the fact that he sought removal of the prohibition on cohabitation (presumably plaintiff wanted his girlfriend to be able to stay at the house) after the custody trial, and the fact that he was allegedly arrested for domestic violence in December 2012 against his girlfriend, all indicate that he cannot provide a stable and satisfactory environment for the children.

At the time of the custody trial and the trial court's decision, the children had lived with both parents for ten years, they did well in school, and their behavior was improving. As discussed, the treating therapist and the court-appointed expert both recommended that the current arrangement continue in the best interests of the children. The fact that plaintiff engaged in alienating behavior, again, did not affect those recommendations. With regard to the cohabitation issue, this arose after the trial and decision and the motion was denied by the trial court. Defendant is correct that plaintiff was arrested for domestic violence, but again this occurred after the trial and decision, and an order of nolle prosequi was entered shortly after. While these incidents do raise some questions, they do not show that the trial court's finding clearly preponderates in the opposite direction, particularly where they occurred after the trial court issued its decision.

Defendant also argues that the factor (e), "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes," should have favored her because plaintiff "may or may not" have a live-in girlfriend and the current arrangement is disruptive to the children. However, defendant does not support these allegations. There was no mention of a live-in girlfriend at trial, and the prohibition on cohabitation in the marital home still exists. Further, as discussed, the treating therapist and the court-appointed expert both recommended that the current arrangement continue in the best interests of the children. Defendant has offered no evidence or explanation as to how the arrangement was not working or how it has negatively impacted the children.

With regard to factor (f), the moral fitness of the parties, despite finding in her favor, it appears defendant is attempting to argue that the trial court should have given this factor more weight, but that is left to the discretion of the trial court. *Berger*, 277 Mich App at 705.

Defendant also cites factor (g), the health of the parties, but does not specifically challenge this factor. Accordingly, we decline to address it.

Defendant next argues that the trial court's finding regarding factor (h), "[t]he home, school, and community record of the child," is against the great weight of the evidence because she consistently dropped the children off at school and picked them up, and also signed them up for school activities. However, this is not enough to show that the evidence clearly preponderates in the opposite direction. Two of the children's teachers testified that the children did well in school, received high marks, and were very bright and well-behaved. Both parents

also attended parent-teacher conferences and school activities. The mere fact that defendant dropped the children off at school and picked them up is not enough to overcome the great weight of the evidence standard.

With regard to the children's reasonable preference, factor (i), defendant argues that this factor should not be heavily weighted. Again, that is left to the discretion of the trial court, *Berger*, 277 Mich App at 705, and there is no indication that the trial court gave this factor significantly more weight.

Defendant does not challenge the trial court's finding on factor (j), "the willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents," but argues that its finding contradicts an award of joint custody because it shows that the parties cannot cooperate. As will be discussed *infra*, section III, the trial court considered the parties' inability to cooperate, but after weighing the options, it ultimately concluded that it was in the children's best interest for the parties to have joint custody.

Further, the trial court's finding regarding factor (k), domestic violence, was not against the great weight of the evidence. The trial court did not find domestic violence to be a factor. It noted that there was a PPO in place at one point, but stated that the facts showed that there was mutual pushing and shoving. This is supported by the record. There was also evidence that both parties handled the situation poorly, including the fact that defendant served the PPO on plaintiff while he was at home with the children and that plaintiff left the document in plain view where one of the children read it. Defendant again points to the December 2012 domestic violence incident involving plaintiff and his girlfriend, but she makes no argument that the trial court's finding on this factor was against the great weight of the evidence, and again, that incident occurred after the trial court issued its opinion.

Finally, defendant argues that the trial court failed to consider factor (*l*), "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." Although the trial court did not specifically state that it was addressing this factor, it clear from its decision that it took into account the court-appointed expert's report and recommendation, which is a factor that the trial court considered to be highly relevant. The trial court stated that the court-appointed expert had "serious concerns about the safety of the children if it's anything but joint custody." And this was a significant factor in the trial court's decision to award joint custody.

Therefore, contrary to defendant's argument, the trial court's findings regarding the best interest factors were not against the great weight of the evidence. The trial court made brief, definite, and pertinent findings regarding all the best interest factors in accordance with MCR 2.517(A)(2) and MCR 3.210(D), and those findings were "independently supported or otherwise corroborated by the evidence on the record and thus amenable to appellate review." *Foskett*, 247 Mich App 1, 13; 634 NW2d 363 (2001).

## III. JOINT CUSTODY

Next, defendant argues that joint legal custody was improper because the parties cannot cooperate, disagreed on financial matters and how to address the children's behavioral issues,

and because plaintiff engaged in alienating behavior. Defendant also argues that the joint physical custody arrangement was improper because it is harmful and disruptive to the children.

When considering whether to award joint custody, the trial court "shall determine whether joint custody is in the best interest of the child" by addressing the statutory best interest factors in MCL 722.23, and "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1).

The trial court considered the best interest factors and the facts and circumstances of this case. It was made clear that there was no "perfect" solution regarding custody, and the trial court noted that there was "no great answer here." The trial court acknowledged that "joint custody only works when there's parents that get along reasonably well and we don't have that here." However, the trial court also acknowledged that the court-appointed expert had "serious concerns about the safety of the children if it's anything but joint custody." The court noted that the primary goal is the best interests of the children, and so it chose to follow the expert's recommendation. While it is apparent that the parties did not get along, "Above all, custody disputes are to be resolved in the child's best interests." *Eldred*, 246 Mich App at 150.

Defendant does not explain how joint custody and the week-on/week-off living arrangement has been harmful or disruptive to the children. At trial, the children's behavior was said to be improving, and defendant has not shown otherwise on appeal. Therefore, there is no indication on this record that the trial court's decision to award joint custody was against the great weight of the evidence.

## IV. COURT-ORDERED COUNSELING

Next, defendant argues that the trial court erred by failing to order counseling for the children and by failing to review the custody ruling at a later date. She further argues that the trial court also erred by denying defendant's motion to reestablish counseling, once it had been terminated by the children's therapist, without holding an evidentiary hearing.

We find that defendant's argument is without merit. In the trial court's oral ruling regarding custody, it recommended that the parties and the children continue to see the therapist. In that same oral ruling and at the hearing regarding defendant's motion to reestablish custody, the trial court made it clear that its custody ruling would not be automatically reviewed, but that if a party wished to modify the custody arrangement that party needed to file a motion and convince the trial court that it was in the children's best interest. Further, the trial court did not flatly deny defendant's request to reestablish counseling. Rather, the trial court ordered the therapist to conduct an assessment of the children and to evaluate the custody arrangement and make a recommendation to the court as to whether it should continue. It also ordered that the

therapist continue therapy if she believed it was necessary.[1]  Finally, defendant cites no authority which requires a trial court to order therapy.

## V. ARBITRATION

Next, defendant essentially argues that the arbitrator exceeded his authority because he did not do an accounting from 2007 on, as required by the agreement, and did not verify the documents.  Defendant moved to vacate the arbitration award, which the trial court denied because defendant merely disagreed with the arbitrator's findings regarding the accounting. "Generally, issues regarding an order to enforce, vacate, or modify an arbitration award are reviewed de novo."  *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004).  We also review de novo whether an arbitrator exceeded his or her authority. *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009).

Initially, we note that defendant argues that the matter must be remanded to the trial court to conduct an evidentiary hearing regarding the accounting.  However, she provides no authority for this type of remedy.  Rather, judicial review of arbitration awards is extremely limited, especially in domestic relations proceedings.  *Washington*, 283 Mich App at 671.  MCL 600.5081(2) provides four circumstances under which a reviewing court may vacate a domestic relations arbitration award:

> (a) The award was procured by corruption, fraud, or other undue means.

> (b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.

> (c) The arbitrator exceeded his or her powers.

> (d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

"Pursuant to MCL 600.5081(2)(c), then, a party seeking to prove that a domestic relations arbitrator exceeded his or her authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law." *Washington*, 283 Mich App at 672.  "A reviewing court may not review the arbitrator's findings of fact, and any error of law must be discernible on the face of the award itself."  *Id.* (internal citations omitted).

We conclude that there is no indication on the record that the arbitrator failed to do an accounting or acted beyond the material terms of the agreement.  The parties entered into a Domestic Relations Arbitration Agreement on February 17, 2011, that provided that the

---

[1] The record shows that the children's therapist originally terminated counseling because the children were improving and the goal was to work toward termination.

arbitrator would conduct an "accounting of marital funds use including but not limited to all business and personal accounts from 2007 through pendency of action for reconciliation on balance sheets." The arbitration agreement is clear that the arbitrator was only to conduct an accounting and did not have the power to conduct an audit or award accounts. The record indicates that the parties then stipulated on multiple occasions that October 13, 2010, was the date agreed upon by the parties for determination of the assets and liabilities of the parties because it was when the trial court issued its opinion regarding property division.

The opinion and award shows that the arbitrator conducted an accounting of the marital account balances, as required. He provided balances for the parties' individual accounts and joint accounts. Next, the arbitrator addressed adjustments to the parties' account balances for specific expenditures. He noted that the balance of plaintiff's "AEA account" should be reduced to account for marital debts paid, and provided specific totals. He further noted that the balance of defendant's "CSA account" should be reduced to account for property taxes and household expenses paid, and again, provided specific totals. The arbitrator then proceeded to address adjustments to the balance sheet for credits claimed by the parties. The arbitrator recommended that each party receive a certain amount of credits for various monies paid, and again, provided specific dollar amounts of the expenditures of the parties. The arbitrator summarized that defendant receive $34,069.19 and plaintiff receive $52,160.38 in marital funds, which accounted for bank and non-retirement accounts and the recommended credits. Defendant has not explained how the arbitrator failed to do an accounting. Therefore, we affirm the arbitration opinion and award.

## VI. PROPERTY DIVISION

Next, defendant challenges the trial court's decision to award the parties the marital home as tenants in common, with a 50/50 interest, and to require them to continue to live in the home with the children on alternate weeks. "This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "The trial court's dispositional ruling must be affirmed unless the appellate court is firmly convinced that it was inequitable." *Berger*, 277 Mich App at 727.

"The goal behind dividing marital property is to reach an equitable distribution in light of all the circumstances." *Washington*, 283 Mich App at 673. "However, an equitable distribution need not be an equal distribution, as long as there is an adequate explanation for the chosen distribution." *Id.* When dividing the marital estate, trial courts may consider the following factors:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Berger*, 277 Mich App at 717.]

It is clear from the trial court's ruling that the only reason why it choose to award the marital home to the parties as tenants in common and ordered them to continue with the current living arrangement was to accommodate the joint custody arrangement that was in place. Throughout the proceeding, the trial court acknowledged the fact that the parties had difficulty getting along, and given that it divided all of the parties' remaining property, it is likely that but for the custody arrangement, it would have ordered the marital home to be sold and the proceeds split. This is supported by the fact that the trial court ordered that the home be sold if the current living arrangement ended. Other than to cite the cooperation issues, that the trial court did consider, and to state that the trial court's decision destroys the "status quo of the divorce litigation," defendant provides no other argument as to why the trial court's decision was inequitable. The trial court provided an adequate explanation for its decision, and in light of all the unique circumstances of this case, particularly the custody arrangement, we are not firmly convinced that its decision was inequitable. See *Washington*, 283 Mich App at 673; *Berger*, 277 Mich App at 727.

Defendant also argues that the trial court placed an improper restriction on the use of her mother's cabin which was near the marital home. Although she frames this argument as a challenge to property distribution, the issues does not actually involve property distribution, but rather addresses the parties' parenting time. The provision defendant challenges is actually part of the custody and parenting time order attached to the divorce judgment and provides in relevant part,

> The parent not exercising parenting time shall vacate the premises and shall not stay at the marital home, including Defendant mother's cabin or the other cabin on the property on which the marital home is situated, except defendant may visit her mother at the mother's cabin but defendant shall remain in that cabin during said visits.

Defendant argues that a trial court does not have jurisdiction over the property rights of third parties in a divorce case. But the cases she cites to support her assertion, *Hoffman v Hoffman*, 125 Mich App 488; 336 NW2d 34 (1983) and *Yedinak v Yedinak*, 383 Mich 409; 175 NW2d 706 (1970), do not address the factual situation presented here, where the trial court prevented the parties from staying on the marital premises while the other party exercised parenting time. She also asserts that the trial court's ruling unconstitutionally infringes on her use of the property. However, defendant does not even own the property. Further, the provision still allows defendant to visit her mother at the cabin during plaintiff's parenting time weeks, as long as she remains in the cabin during the visit.

The record shows that the trial court imposed this restriction to ensure that the parties did not interfere with one another's parenting time, particularly where the parties had a history of animosity toward each other. MCL 722.27a(8)(i), provides the trial court with the authority to impose "any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent," which among other things includes "[a]ny other reasonable condition determined to be appropriate in the particular case." Therefore, defendant has not shown how the trial court acted outside its authority.

Finally, defendant argues that the division of marital property was inequitable because she should have been awarded a greater percentage of the marital property based on plaintiff's alienating behavior, alcohol abuse, domestic violence, and secretiveness regarding business and financial affairs. In reaching its decision regarding property division, the trial court thoroughly considered the parties' circumstances and decided to award defendant 52% of the marital assets and plaintiff 48%, finding that although both parties' conduct had contributed to the breakdown of the marriage, plaintiff's extramarital affairs was the primary cause.

Defendant makes assertions that plaintiff was secretive with his business and financial affairs, but she only points to her testimony to support the assertions. Notably, the parties agreed to binding arbitration regarding an accounting of their business and personal affairs and personal property, and the arbitrator concluded that neither party executed fraudulent transactions. Defendant has not shown that the trial court clearly erred by not considering other instances of plaintiff's conduct, and we are not firmly convinced that its decision was inequitable. Therefore, we affirm the trial court's property disposition.

In his cross-appeal, plaintiff asserts that the trial court's amendments to the property division are inequitable. First, the trial court ordered plaintiff to pay defendant an additional $43,136.50 to account for an error made in calculating defendant's portion of the marital estate. It was determined that the award to defendant of her public school pension valued at $86,273 was included in error because this asset had previously been disposed of. The trial court determined that the simplest resolution was to have plaintiff pay defendant half of the $86,273. Plaintiff, however, argues that this skewed the trial court's intended 52/48 distribution. The record indicates otherwise.

The record shows that plaintiff was originally awarded $2,681,902 in marital property and defendant was awarded $2,893,461. The overall estate was worth $5,575,363, so plaintiff took approximately 48% of the marital property, while defendant took 52%. Because the $86,273 was attributed to defendant in error, this reduced her property award to $2,807,188, but did not affect plaintiff's award. The error made the overall marital estate worth $5,489,090, which reduced defendant's percentage to 51 and increased plaintiff's percentage to 49. By requiring plaintiff to pay defendant $43,136.50 (half of the $86,273) to accommodate for the loss, this made defendant's property award $2,850,324.50 and plaintiff's property award $2,638,765.50, bringing the overall percentages back to 52 for defendant and 48 for plaintiff, which was the trial court's intent from the start.

Plaintiff also argues that the trial court erred by awarding plaintiff $86,875.82 for debt attributable to one of his investment projects that was paid from the marital funds. Plaintiff was involved in real estate development, which included a project to develop office buildings known as the BIA project. At the time of the divorce trial, the appraiser determined that the BIA project had a net equity of approximately $16,000, which was awarded to plaintiff. When the parties agreed to arbitration after the divorce trial, it included a determination of how much of the marital estate plaintiff expended on the BIA project so that the funds could be accounted for in the divorce action. The arbitrator found that plaintiff expended $189,751.64 of marital funds on the BIA project. As such, the trial court awarded defendant an additional $86,875.82, which was one half of the marital funds expended, after subtracting the $16,000 in equity that was awarded to plaintiff. Because plaintiff was awarded the BIA project, the trial court determined that

defendant was owed an equitable share of the marital funds of which plaintiff was now receiving the full benefit.

Plaintiff has not shown how the trial court's award was inequitable. Plaintiff's argument is based on a hypothetical, when in reality, $189,751.64 in marital funds was expended on the BIA project. Plaintiff argues that if he had not spent the marital funds on the BIA project, then the project would have a debt of $189,751.64. But that requires one to assume that plaintiff would have taken out a loan against the project had the marital funds not been available. Further, plaintiff argues that the BIA project was a marital project in the ordinary course of business, but the parties submitted to binding arbitration which determined otherwise. Therefore, we are not firmly convinced that the trial court's amended property disposition was inequitable.

We conclude that neither defendant nor plaintiff identified any errors warranting relief.

Affirmed.

/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

-12-