*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA LABARRE,

        Plaintiff-Appellant,

v

ROBERT S. LABARRE,

        Defendant-Appellee.

UNPUBLISHED
August 15, 2019

No. 346508
Ingham Circuit Court
Family Division
LC No. 09-002722-DM

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order declining to modify joint legal custody or parenting time. Plaintiff and defendant had joint legal custody and a parenting-time schedule with the child, BTL, primarily living with plaintiff during the school year and with defendant during the summer. Plaintiff asked for sole legal custody and additional parenting time during the summer. The trial court declined those requests because plaintiff did not show that they were in BTL's best interests. We affirm.

## I. BACKGROUND

When the parties signed a consent judgment of divorce in 2010, the parties were awarded joint legal and physical custody as well as equal parenting time with BTL, who was then two years old. By the time BTL started school in 2013, plaintiff had moved to Howell, and defendant had moved to DeWitt. Plaintiff enrolled BTL in school in Brighton, and defendant sought a change in parenting time. The trial court resolved the parenting-time dispute in March 2014 by giving defendant parenting time on alternating long weekends from Wednesday evening through Sunday evening during the school year. During the summer, BTL lived with defendant, and plaintiff had alternating weekends, from Friday evening through Sunday evening, and one mid-week visit for approximately 4½ hours. Each party had two full weeks with BTL during the summer with the option of taking the full two weeks at once or as two one-week blocks.

In the summer of 2017, plaintiff requested sole legal custody, arguing that she and defendant had difficulty co-parenting and that defendant would not agree to medical treatment for the diagnosis and treatment of BTL's ADHD, BTL's need for orthodontic work, and BTL's

-1-

need for vision testing and glasses. Plaintiff also requested an alternating weekly or biweekly schedule during the summer, which would increase her overall parenting time.

At the referee hearing, plaintiff testified about defendant's nonparticipation in the diagnosis and treatment of BTL's ADHD. At one point, defendant took BTL off of his stimulant medication, and BTL exhibited an extrapyramidal effect when he went back on the medication, which required plaintiff to seek additional treatment to identify a more suitable medication. With the aid of a pediatric psychiatrist, whom defendant refused to see or take BTL to, BTL went on a suitable nonstimulant medication. Plaintiff also testified that defendant balked at the idea of braces for a ten-year-old child, but ultimately agreed to speak with the dentist about BTL's teeth. Plaintiff further testified that defendant refused to give plaintiff or the eye doctor's office the insurance information for BTL's eye exam, and defendant insisted on taking BTL to an eye doctor of his choosing without notifying plaintiff about the appointment. Plaintiff ultimately chose a pair of glasses after learning that BTL needed them, but defendant refused to pay for the glasses because he thought plaintiff chose an unnecessarily expensive pair.

On the issue of parenting time, plaintiff opposed increasing defendant's overnights with BTL during the school year to balance out her proposed expanded parenting time during the summer. Defendant opposed plaintiff's request for expanded summer parenting time without a comparable decrease in her parenting time during the school year. Plaintiff stated her intention to find summer activities for BTL and her belief that increasing parenting time with defendant during the school year would be detrimental to BTL's school performance. Plaintiff testified that, during the summer, she went 13 days without seeing BTL, except for one mid-week visit.

After the hearing, the referee found that the parties agreed that changed circumstances warranted revisiting custody and parenting time and that an established custodial environment existed with both parents. The referee evaluated the best-interest factors under MCL 722.23, and determined that factors (a), (b), (d), (e), (f), (g), (h), and (k) weighed equally or neutrally. The referee found that factor (c)—the capacity and disposition to provide the child with food, clothing, and medical treatment—favored plaintiff because she was better able to get medical treatment for BTL, while defendant delayed or made it inconvenient for plaintiff to get BTL treatment. The referee found that factor (j) weighed against both parties because they had difficulty keeping their personal conflict separate from their co-parenting. The referee weighed factor (l) in favor of joint legal custody and directed the parties to work harder to be proper joint legal custodians. The referee noted that defendant had become more engaged in BTL's medical treatment and concluded that both parties had "unclean hands" when it came to joint legal custody. The referee instructed the parties to seek judicial intervention to resolve disputes rather than resorting to unilateral action. The referee stated, however, that modification of legal custody may be warranted in the future if the necessity for judicial intervention became excessive. The referee ultimately concluded that plaintiff had not shown by clear and convincing evidence that granting her sole legal custody would be in BTL's best interests.

The referee also evaluated the parenting-time factors under MCL 722.27(a)(7), and concluded that factors (a), (b), (c), (d), (h), and (i) did not apply. For factor (e), the referee found that BTL had acclimated to the travel distance between the parties (who lived an hour apart) with no negative impact. For factor (f), the referee found that both parents were eager to have parenting time and exercise their parenting time consistent with court orders or in a manner best

suited to BTL's interests when deviation from the court-ordered schedule was necessary. For factor (g), the referee found that both parties exercised parenting time regularly. The referee ultimately declined to expand plaintiff's summer parenting time because plaintiff had not shown by a preponderance of the evidence why her proposed change, which would significantly reduce the number of defendant's overnights with BTL, would be in the child's best interests.

Plaintiff objected to the referee's recommendations and requested a de novo hearing. At the de novo hearing, plaintiff stated her willingness to participate in joint co-parenting therapy and mediation to resolve disputes. Defendant would only agree to joint therapy if plaintiff underwent individual therapy first, and he would only agree to mediation if the trial court found it to be the most appropriate dispute resolution method. The parties again testified about their past disputes in obtaining medical treatment for BTL related to the ADHD diagnosis, the orthodontic problem, and the child's vision. Plaintiff stated that BTL had gotten braces since the referee hearing and that defendant had taken BTL to the orthodontist to fix a problem with the braces. Defendant continued to give BTL his ADHD medication, although defendant still refused to take BTL to the psychiatrist.

Plaintiff continued to ask for alternating weeks in the summer, stating that she went 12 or 13 days without seeing BTL in the summer except for a brief mid-week visit. Unlike at the referee hearing, plaintiff proposed extending defendant's parenting time during the school year by one additional overnight every other week. Defendant objected to this proposal and wanted to maintain his summer parenting time because he anticipated that parenting time during the school year would be less available as BTL's extracurricular activities and social engagements increased.

At the conclusion of the hearing, the trial court stated that it would finish reviewing the transcripts before it rendered a decision. The trial court subsequently signed an order affirming the referee's recommendations against changing legal custody or parenting time.

## II. DISCUSSION

Three standards of review apply to child custody disputes. "The great weight of the evidence standard applies to all findings of fact. Under that standard, the trial court's findings will be sustained unless the evidence clearly preponderates in the opposite direction." *LaFleche v Ybarra*, 242 Mich App 692, 695; 619 NW2d 738 (2000) (citation omitted). "The clear legal error standard applies when the trial court errs in its choice, interpretation, or application of the existing law." *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006). "Discretionary rulings are reviewed for an abuse of discretion, including a trial court's determination on the issue of custody." *Foskett v Foskett*, 247 Mich App 1, 5; 634 NW2d 363 (2001). These standards also apply to parenting-time disputes. See *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005).

## A. LEGAL CUSTODY

Plaintiff argues that the trial court erred by failing to change joint legal custody to sole legal custody for plaintiff. We disagree.

To modify a custody decision, the moving party must establish by a preponderance of the evidence that proper cause or changed circumstances warrant a modification of custody. *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011). Once the trial court finds proper cause or changed circumstances to revisit custody, the trial court must determine whether the proposed custody modification would alter the child's established custodial environment. *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010). If the requested change would alter the child's established custodial environment, the moving party must establish by clear and convincing evidence that the proposed change in custody would be in the child's best interests. *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008).

The parties agree that changed circumstances allowed the trial court to revisit custody. The referee found that BTL had an established custodial environment with both parents. Plaintiff does not challenge this finding, nor does plaintiff challenge the referee's findings on the best-interest factors. Instead, plaintiff argues that the referee's findings as to the parties' inability to communicate and co-parent effectively demonstrated why plaintiff should have been granted sole legal custody.

It is true that the referee concluded that best-interest factor (c)—the parties' capacity and disposition to provide the child with food, clothing, and medical care—favored plaintiff. The referee reasoned that plaintiff sought out medical treatment and abided by medical professionals' recommendations, while defendant failed to engage or delayed in engaging with medical providers, made it more difficult for plaintiff to obtain medical treatment for BTL, and unilaterally deviated from the prescription of BTL's medication. Yet the referee also concluded that factor (*l*), which permits consideration of any other factor, weighed in favor of maintaining joint legal custody because defendant had shown improvement in participating in BTL's medical treatment. The referee warned the parties to act as joint legal custodians and to take unresolved disputes to court rather than resort to unilateral action.

Plaintiff's argument that these recommendations demonstrate why she should be granted sole legal custody is unpersuasive because it does not identify clear and convincing evidence in favor of granting her sole legal custody. *Powery*, 278 Mich App at 528. Joint custody "means that the parents share the decision-making authority with respect to the important decisions affecting the welfare of the child," and the trial court must resolve decisions in the child's best interests when the parents cannot agree. *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993). Plaintiff analogizes this case to *Dailey*, 291 Mich App at 667-669, in which this Court affirmed a trial court's modification of custody from joint legal custody to sole legal custody to the defendant-father after the parties spent several months exchanging motions regarding the child's medical treatment. The trial court in that case found that three factors favored the defendant-father, and although the parties were unable to make decisions together about the child's medical treatment, the defendant-father demonstrated his willingness to acquiesce to the plaintiff-mother's demands and remain open to the plaintiff's opinions, while the plaintiff did not reciprocate. *Id*. at 667-668.

While the instant case has some similarity to *Dailey* in that defendant contributed to the parties' dysfunctional co-parenting related to BTL's medical treatments, the record supports that he also participated in decisions for BTL's medical treatment. For example, defendant agreed to continue administering ADHD medication to BTL and to have BTL's orthodontic needs treated,

and he agreed that BTL needed glasses. These three concerns—the disputes over BTL's ADHD medication, orthodontic treatment, and need for glasses—were the primary disputes underlying plaintiff's request for sole legal custody, and unlike in *Dailey*, these disputes were resolved. Additionally, unlike in *Dailey*, the referee found that both parties had "unclean hands." Indeed, plaintiff admitted that she resorted to unilateral decision-making because, according to plaintiff, defendant refused to participate. Thus, while the referee assigned a greater degree of blame to defendant in his consideration of factor (c), plaintiff bore a portion of the blame, as reflected by the referee's finding on factor (*l*). This further distinguishes this case from *Dailey*. Plaintiff also testified that BTL was doing well in school, played basketball, and had many friends. Thus, also unlike in *Dailey*, BTL appears to be living a generally healthy and well-adjusted life, despite his parents' demonstrated animosity toward each other and its taint on their co-parenting. Accordingly, the referee's findings were not against the great weight of the evidence, and the trial court did not abuse its discretion by maintaining joint legal custody.

Still, according to plaintiff, the trial court erroneously affirmed the referee's recommendation without making independent findings of fact after plaintiff presented new evidence at the de novo hearing.

In a custody dispute, a trial court must hold a de novo hearing when a party files a timely objection to a referee's recommendation and requests a de novo hearing to present additional evidence. *Cochrane v Brown*, 234 Mich App 129, 131-132; 592 NW2d 123 (1999). MCL 552.507 governs the conduct of a de novo hearing and states, in pertinent part, as follows:

> (4) The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.

> (5) A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:

> (a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.

> (b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee and to supplement that evidence with evidence that could not have been presented to the referee.

> (6) Subject to subsection (5), de novo hearings include, but are not limited to, the following:

> (a) A new decision based entirely on the record of a previous hearing, including any memoranda, recommendations, or proposed orders by the referee.

> (b) A new decision based only on evidence presented at the time of the de novo hearing.

(c) A new decision based in part on the record of a referee hearing supplemented by evidence that was not introduced at a previous hearing.

Under MCL 552.507, a trial court may rely on a referee's recommendation when a party has been given the opportunity to present evidence at a de novo hearing. *Dumm v Brodbeck*, 276 Mich App 460, 465-466; 740 NW2d 751 (2007).

Plaintiff had the opportunity to present evidence at the de novo hearing that echoed or supplemented the evidence submitted to the referee, as required by MCL 552.507(5)(b). Yet none of the evidence she presented was new substantive evidence bearing on legal custody. At the hearing, plaintiff again testified about defendant's nonparticipation in the diagnosis and treatment of BTL's ADHD, and about the parties' dispute over having BTL's vision tested because of defendant's refusal to share his wife's insurance information with plaintiff. Plaintiff further testified that BTL had gotten braces since the referee hearing and that defendant had taken BTL to the orthodontist to fix a problem with the braces. She also testified about the cost of BTL's glasses. At the referee hearing, plaintiff had testified extensively about defendant's nonparticipation in the diagnosis and treatment of the child's ADHD, in addition to defendant's refusal to communicate with her directly about the child's orthodontic and ophthalmological care. Thus, the portion of her testimony at the de novo hearing that discussed these issues was cumulative. The added details that plaintiff testified about at the de novo hearing—namely the follow-up orthodontic care and the exact cost of BTL's glasses—did not affect legal custody because they did not implicate the parties' communication and co-parenting deficiencies. In fact, that defendant had taken BTL to the orthodontist to fix a problem with BTL's braces militated against plaintiff's legal objection that defendant remained oppositional; defendant's taking BTL to the orthodontist showed that defendant was participating in BTL's treatment and co-parenting more effectively. Accordingly, the trial court did not clearly err by adopting the referee's recommendation to maintain joint legal custody.

Nor did the trial court err when it did not independently consider the best-interest factors. A trial court is required to confirm that the referee considered the child's best interests or make its own findings of fact regarding the best-interest factors before modifying custody. *Rivette v Rose-Molina*, 278 Mich App 327, 332-333; 750 NW2d 603 (2008). Unlike *Rivette*, 278 Mich App at 332, in which the trial court explicitly stated that it would not revisit the referee's findings on the best-interest factors, the trial court here stated that it would review the transcripts of the referee hearing before it rendered a final decision. The trial court also demonstrated that it had read the referee's recommendation. Plaintiff criticizes the trial court for entering the de novo hearing with a bias against plaintiff based on the referee's recommendation and for commenting that the referee had a good reputation. However, the trial court's review of the referee's recommendation was legally required, and the trial court's comment about the referee's ability did not reflect an abdication of the trial court's responsibility to review the best-interest factors before making a final decision, especially when the trial court held a de novo hearing and stated at the conclusion of that hearing that it still needed to finish reviewing the transcripts of the referee hearing. In short, the record shows that the trial court reviewed the best-interest factors, as it was required to do, before it adopted the referee's recommendation, as it was permitted to do. Therefore, the trial court did not err by adopting the referee's recommendation for joint legal custody without independently stating findings of fact or conclusions of law.

## B. PARENTING TIME

Plaintiff argues that the referee did not adequately consider the issue of parenting time. We disagree.

The trial court may modify parenting time only for proper cause or changed circumstances. *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010). If the proposed modification of parenting time would not alter the child's established custodial environment, the moving party must show by a preponderance of the evidence that the modified schedule would be in the child's best interests. *Id*. at 23.

The referee determined that the parties had agreed that changed circumstances warranted modification of parenting time, the child had an established custodial environment with both parents, and modifying parenting time required only a showing by a preponderance of the evidence that the change would be in BTL's best interests. Plaintiff challenges none of these conclusions, arguing only that the referee's recommendation to deny plaintiff's request to change summer parenting time did not account for the long periods of time plaintiff did not see the child in the summer and that plaintiff's proposed schedule would give defendant more time during the school year. Plaintiff's argument overlooks her testimony and the referee's finding on plaintiff's requested summer parenting-time schedule. Initially, defendant proposed increasing his overnights during the school year to balance out plaintiff's requested increase in summer parenting time, but plaintiff opposed this request while continuing to ask for expanded parenting time during the summer. In addition, although plaintiff testified that she had one mid-week visit and went 13 days between seeing the child, her summer parenting time consisted of alternating weekends and one mid-week visit. Therefore, plaintiff had four overnights with the child during a two-week time span in the summer, and only nine nights passed between the end of one long weekend and the beginning of the next long weekend plaintiff had with the child. Putting aside each party's two uninterrupted weeks during the summer, plaintiff's testimony that she went 13 days without seeing the child in the summer was inaccurate. On the basis of this testimony and the parenting-time schedule, the referee correctly found that plaintiff overstated the amount of time she went without seeing the child in the summer. The referee further noted that plaintiff's proposal would significantly reduce the number of defendant's overnights per year, which was consistent with plaintiff's testimony that she did not agree that defendant should have additional overnights during the school year. The referee also evaluated the parenting-time factors, MCL 722.27a(7), which plaintiff does not challenge on appeal. The referee found that both parents exercised parenting time regularly and generally in accordance with court orders, except when the child's interests required a deviation from the schedule. The referee further found that the travel distance between the parties did not have a negative impact on the child. Accordingly, plaintiff's argument that the referee did not adequately consider the issue of parenting time is incorrect.

Plaintiff further argues that the trial court erred by adopting the referee's recommendation without making additional findings of fact regarding the parenting-time factors based on new evidence presented at the de novo hearing, and that it erred by not rectifying the error in the referee's failure to consider the issue thoroughly. At the referee hearing, plaintiff testified that she was not amenable to expanding defendant's overnight parenting time during the school year. At the de novo hearing, however, after plaintiff described her request for increased parenting

time in the summer by alternating weeks, she offered to extend defendant's alternating long weekends with BTL during the school year from Sunday evening to Monday morning, offering defendant two additional overnights per month during the school year. Defendant then stated his opposition to that compromise and his desire to keep the existing parenting-time schedule because the child's anticipated increased extracurricular activities during the school year would decrease the availability of parenting time during the school year. Plaintiff repeated her testimony that she went 12 or 13 days without seeing the child in the summer. Plaintiff testified that she believed her proposed alternating weekly summer parenting-time schedule would benefit the child by allowing him to participate in more activities during the summer and to see his school friends more often.

Again, a party is entitled to a de novo hearing upon the filing of a timely objection to a referee's recommendation. *Cochrane*, 234 Mich App at 133-134. When an issue was not the subject of a referee hearing, however, "there [is] no basis for a de novo hearing." *Sturgis v Sturgis*, 302 Mich App 706, 708; 840 NW2d 408 (2013). Plaintiff's request at the de novo hearing for a modification of parenting time was different from her position at the referee hearing, and she cites no authority for the proposition that the trial court was required to consider plaintiff's changed position. Further, MCL 552.507 requires the trial court to provide the objecting party with the opportunity to present additional evidence on contested issues. *Cochrane*, 234 Mich App at 133-134. The trial court complied with that requirement and allowed plaintiff to present evidence at the de novo hearing. Yet plaintiff did not present any supplemental evidence about parenting time that she could not have presented at the referee hearing. See MCL 552.557(5)(b). Thus, the trial court did not clearly err by adopting the referee's recommendation against modifying summer parenting time.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien