*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHANNON ELAINE WALLACE, formerly known
as SHANNON ELAINE COLWELL,

       Plaintiff-Appellant,

v

SHANE MONDAY COLWELL,

       Defendant-Appellee.

UNPUBLISHED
October 13, 2022

No. 360255
Oakland Circuit Court
Family Division
LC No. 2016-844766-DM

Before: SWARTZLE, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the lower court's order declining to modify its previous custody ruling, modifying the parties' parenting time, and denying plaintiff's request to change the children's schools. Finding no error requiring reversal, we affirm.

## I. BACKGROUND

At the time of the parties' divorce in December 2016, they agreed to joint legal and physical custody of their two children, MC age 14 and AC age 12, with an unspecified parenting-time schedule that allowed the children equal time with each parent. The most recent custody order entered by consent in June 2019 established parenting time for defendant every other weekend and overnight on Thursdays on the weeks without weekend parenting time. The consent order also specified an equally divided holiday parenting-time schedule and provided each parent with two one-week blocks of uninterrupted parenting time each summer.

In January 2021, the children's guardian ad litem (GAL) issued a report and recommendation advising the trial court that defendant had uncovered a plan by plaintiff to move with the children from Rochester to New Baltimore where her fiancé lived which would result in a commute of approximately one hour each way between plaintiff's new residence and the children's schools in Rochester. The GAL recommended that the children remain in Rochester schools, that the parties return to an equal parenting-time schedule while plaintiff remained in Rochester, and that plaintiff's parenting time be reduced to alternating weekends during the school year in the event that she moved.

-1-

Plaintiff relocated with the children to her fiancé's home in mid-March 2021. During May 2021, she moved to transfer the children from Rochester schools to Anchor Bay schools in New Baltimore and to alter the parenting-time schedule in whatever manner necessary to implement that change. Defendant responded by moving to change custody and parenting time, arguing that plaintiff's unilateral decision to move the children an hour away constituted proper cause and a substantial change of circumstances. The trial court agreed that the long morning commute on school days satisfied the threshold burden for reconsidering custody. Plaintiff and her fiancé married in July 2021.

Following an evidentiary hearing, the court opined that an established custodial environment existed with both parents, such that clear and convincing evidence had to be presented in support of a custody modification. Concerning the statutory best-interest factors, MCL 722.23, the trial court found that factors (a) (love, affection, and emotional ties), (g) (mental and physical health), and (k) (domestic violence), equally credited both parents; while factor (j) (willingness and ability to facilitate child's relationship with other parent) did not favor either parent. The court interviewed each child separately *in camera* and took their statements into consideration under factor (i) (child's reasonable preference), but did not consider any other unenumerated considerations under factor (l) (any other factor). The remaining best-interest factors favored defendant.

The court provided a lengthy and detailed discussion of the best-interest factors. The court repeatedly addressed the repercussions of plaintiff's move. The court cited evidence regarding plaintiff's timeline of disclosing the move and possible school change, which involved revealing information to the children well before defendant. The court expressed concern regarding plaintiff's failure to appreciate how her actions left the children in a position of having to keep secrets from defendant, caused them uncertainty about their future schooling, and made MC, in particular, feel guilty for telling defendant the truth. The court opined that plaintiff's decision-making concerning the move gave almost no consideration to the children. The suddenness of the move resulted in the children having makeshift bedrooms without appropriate privacy in an unfamiliar home. Further, plaintiff seemed to offer conflicting views on the distance between Rochester and New Baltimore, sometimes characterizing it as an insignificant 20- to 30-minute drive when convenient to her position, and sometimes representing the distance as logistically unworkable for weekday parenting time and extracurricular activities to create sympathy for the children. The court observed that other actions by plaintiff reflected her failure to observe appropriate boundaries for her relationship with the children and a disinclination toward candor and healthy interactions with the children.

The court observed, defendant raised his concerns with plaintiff directly, instead of involving the children, and described appropriate disciplinary methods, guidance, and supervision. Defendant also had a greater willingness to take advice from professionals and he prioritized his role as a parent of the children over his desire to be their friend. The court determined that the children had more stability and permanence as a family unit with defendant in Rochester compared to plaintiff's recent move and integration of both her and her new husband's children into a single blended family.

The trial court also addressed the statutory parenting-time factors, MCL 722.27a(7), most of which were deemed irrelevant, duplicative of best-interest factors, or not relevant to the issues

raised on appeal. Relative to parenting-time factor (e) (inconvenience and burden of traveling for parenting time), the court again observed that the burden of traveling between the parties' homes was created by plaintiff's decision to prioritize her own needs, already negatively impacted the children, and would be likely to cause more difficulty over time. The court also determined under parenting-time factor (g) (whether a parent has frequently failed to exercise parenting time) that despite isolated instances of missed parenting time by defendant, his overall history did not reflect failure to exercise parenting time.

The court held that plaintiff failed to demonstrate that uprooting the children from the school district they had always known served their best interests. The court further held that both parties failed to present clear and convincing evidence to support modifying the parties' joint physical custody. However, it found that modification of the parenting-time schedule would serve the children's best interests. The court emphasized that it took care not to disturb the children's established custodial environments while simultaneously minimizing the unnecessarily excessive travel between Rochester and New Baltimore each day for school. To that end, the court granted plaintiff parenting time three weekends of each month, as well as nonovernight parenting time on Wednesday afternoons. The court granted defendant the balance of the parenting time during the school year. During summer break, the court ruled that parenting time be exercised on alternating weeks. The court did not alter the parties' previous holiday schedule.

## II. STANDARDS OF REVIEW

"Under the Child Custody Act, MCL 722.21 *et seq*., 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. "Under this standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *Id*. (quotation marks, alteration, and citation omitted). When parents cannot agree on important decisions, the court must resolve the issue in the best interests of the child. *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019).

## III. ANALYSIS

### A. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Plaintiff first argues that the trial court erred by finding that defendant established proper cause and a change of circumstances permitting reconsideration of the parties' custody arrangement. We disagree.

Defendant contends that plaintiff waived review of this issue by agreeing in her own motion, at oral argument, and in a stipulated order that provided that the required threshold had been met. Plaintiff disagrees, reasoning that she contested defendant's motion and that stipulating to an order reflecting the court's oral ruling did not waive her right to appeal the underlying decision. "A waiver is an intentional relinquishment or abandonment of a known right." *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016) (citation

omitted). "A stipulation is an agreement, admission or concession made by the parties in a legal action with regard to a matter related to the case." *Id.* (quotation marks and citation omitted). For a stipulation to constitute waiver, the language must "show an intent to plainly relinquish that right." *Id.* at 395-396 (citation omitted). If an issue has been waived below, this Court will not review it on appeal. *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021).

We are unpersuaded that plaintiff waived review of this issue by asserting in her own motion that "an obvious change of circumstances" had arisen so as to require an evidentiary hearing. Plaintiff's motion did not contain a clear statement of the relief she sought. She clarified at oral argument that she was primarily seeking a change in the children's school and that any change in parenting time would be secondary to that issue. She did not ask to change the parties' custody arrangement. Because plaintiff's motion did not plainly concede that her move constituted an appropriate basis to reconsider custody, it did not waive appellate review of this issue. Nor did her attorney's signature on the order finding proper cause and change of circumstances have that effect. As plaintiff correctly points out in her briefing before this Court, appellate review is not foreclosed merely because the form and substance of an order was approved by stipulation when the subject order simply memorializes a finding or decision announced after a contested hearing. *Ahrenberg Mech Contracting, Inc v Howlett*, 451 Mich 74, 77-78; 545 NW2d 4 (1996).

Whether plaintiff's attorney waived this issue at oral argument is a closer question. The trial court considered an evidentiary hearing necessary to address plaintiff's request to transfer the children to Anchor Bay schools. After obtaining clarification from plaintiff that she did not seek a change in custody, the court addressed defendant's motion, noting that it *did* involve a request to change custody. The court stated that plaintiff's move constituted proper cause and a change in circumstances because it required the children to commute to school each day. Plaintiff's attorney responded, "Correct" which signified counsel's agreement that plaintiff's move and the children's resulting commute to school constituted a sufficient ground to reconsider custody. Because plaintiff agreed through her counsel to the trial court's evaluation of the circumstances, she cannot challenge that finding on appeal. *LeFever*, 336 Mich App at 670 n 3. We address this issue, however, because it is relevant to proper resolution of other issues properly before this Court.

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). The trial court may not "revisit an existing custody decision and engage in a reconsideration of the statutory best-interest factors" unless the moving party demonstrates proper cause or a change of circumstance by a preponderance of the evidence. *Pennington*, 329 Mich App at 571 (citation omitted). In *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), this Court specified the threshold requirements a party seeking a change of custody must satisfy:

> [T]o establish "proper cause" necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. When a

-4-

movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors.

\* \* \*

[I]n order to establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Id*. at 512-514.]

The trial court found both proper cause and a change in circumstances because of the children's long morning commute from plaintiff's home in New Baltimore to their schools in Rochester. Although plaintiff disputed the length of the commute, defendant asserted that it took approximately an hour to travel from New Baltimore to Rochester. The distance meant that the children would have to wake up substantially earlier to travel to school from plaintiff's home than they would have been required to do when plaintiff resided in Rochester. Under the then-existing custody order, this disruption in the children's schedules would affect the majority of their school mornings. Considering MC's and AC's ages—then 13 and 11, respectively—the reduced sleep and attendant fatigue presented a risk to their academic performance, thereby implicating best-interest factor (h) (home, school, and community record), MCL 722.23(h), at minimum. While plaintiff is of the opinion that her move to New Baltimore was a normal life change that did not *significantly* affect the children's well-being, we are unpersuaded that the trial court's contrary opinion was against the great weight of the evidence in light of the deference the trial court's finding is afforded on appeal. The record before the trial court at the time of its decision did not clearly preponderate in the opposite direction. *Pennington*, 329 Mich App at 570.

## B. BURDEN OF PROOF

Plaintiff next argues that the trial court erred by concluding that its alteration of the parties' parenting-time schedule did not affect the children's established custodial environments. Plaintiff further reasons that because the court explicitly found that the parties failed to present clear and convincing evidence supporting a change of custody, it could not order the new parenting-time schedule because the schedule modified the children's custody and established custodial environments. We disagree.

"When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Pierron*, 486 Mich at 85. "The established custodial environment is the environment in which 'over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.' " *Id*. at 85-86, quoting MCL

722.27(1)(c). This determination "is a pivotal step in a custody battle because it dictates the applicable burden of proof." *Bofysil v Bofysil*, 332 Mich App 232, 243; 956 NW2d 544 (2020). When modification of an earlier judgment or order would change the established custodial environment, "the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010) (citations omitted). "If the proposed change does not change the custodial environment, however, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*. (citation omitted).

Plaintiff relies heavily on *Lieberman*, 319 Mich App 68. In that case the trial court granted the father's motion to modify parenting time and change the children's schools after determining that (1) the dispute primarily centered on which school the children should attend; (2) any change in parenting time was a secondary request to accommodate the change in school; (3) the children had an established custodial environment with both parents that would be unaffected by a change in schools; and (4) a preponderance of evidence demonstrated that changing the children's schools was in their best interests. *Id*. at 76. In order to facilitate the school transfer, the court reversed the previous parenting-time schedule, thereby reducing the mother's parenting time from 225 overnights to 140 overnights each year. *Id*. at 72, 76.

This Court vacated the trial court's order because it failed to apply the correct legal framework to the father's motion. *Id*. at 84, 93-94. This Court determined that the father's motion was a mislabeled request to change physical custody, because he sought a schedule that would reduce the mother's primary physical custody to a distinct minority of the year. *Id*. at 85-86. "Thus, it defies the plain meaning of the word 'primary,' as well as rudimentary mathematics, to say that reducing the primary custodian's overnights with the children from 225, or nearly 62% of the calendar year, to 140, or approximately 38% of the calendar year, does not change primary physical custody." *Id*. This Court determined that, in light of the proposed change in physical custody, the trial court should have applied "the more burdensome and restrictive standard set forth in *Vodvarka* . . . and the first issue the trial court had to consider was whether [the father] had established proper cause or a change of circumstances that met the standards set forth in *Vodvarka*." *Id*. at 86. This Court reasoned that, even accepting the father's motion as simply seeking modification of parenting time and a change of schools, the standards outlined in *Vodvarka* would remain the applicable legal framework because the trial court erred by finding that the proposed change would not affect the established custodial environment the children had with the mother. *Id*. at 86-87. Notably, *Vodvarka* requires the moving party to make a preliminary showing before the trial court may consider whether the proposed modification is in a child's best interests. *Id*. at 93-94. That is, under *Vodvarka*, the movant must first establish proper cause or a change of circumstances having a significant effect on the child's well-being, *Vodvarka*, 259 Mich App at 512-513 (describing necessary threshold showing), and the trial court never addressed that requirement in *Lieberman*, 319 Mich App at 76.

The instant case does not suffer from the same procedural defect. At the first motion hearing, the trial court recognized that defendant requested a change in physical custody and that it might be difficult to craft a parenting-time order that did not alter the children's established custodial environment. The court also found proper cause and a change of circumstances consistent with the requirements of *Vodvarka*. As explained later in this opinion, the trial court's finding regarding that threshold was not against the great weight of the evidence. Having made

-6-

the necessary threshold finding, the trial court could properly hold an evidentiary hearing and reconsider the statutory best-interest factors.

In presenting her argument regarding the burden of proof applicable to the trial court's decision, plaintiff seems to conflate the concepts of physical custody and established custodial environment. For instance, she contends that if the 85-day reduction in overnights involved in *Lieberman* "effectively changed custody," so too did the 146-day reduction ordered by the trial court in this case. We assume from context and plaintiff's reliance on *Lieberman*, that she is referring to *physical* custody. Legal custody is not at issue in this case. She then follows this assertion with citation to caselaw regarding changes to the established custodial environment, which require clear and convincing evidence regarding the child's best interests. Further compounding this confusion, plaintiff at times asserts that the trial court's order clearly "*changes the established custodial environment* of the children without holding [defendant] to the correct evidentiary burden" (emphasis added), only to later argue that "the trial court entered an order that did in fact *change custody*, in contravention of the Child Custody Act, which requires that a party demonstrate that a change in custody is clearly and convincingly in the child's best interest." (Emphasis added.)

As explained in *Lieberman*, although the Child Custody Act does not define "physical custody," it is defined in the Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq.*, as " 'the physical care and supervision of a child.' " *Lieberman*, 319 Mich App at 79, quoting MCL 722.1102(n). In child-custody disputes, physical custody is similarly understood to refer to "a child's living arrangements." *Lieberman*, 319 Mich App at 79. An established custodial environment, on the other hand, is not strictly a matter of living arrangements. "A child's established custodial environment is the environment in which 'over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.' " *Pennington*, 329 Mich App at 577, quoting MCL 722.27(1)(c). "The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c). "An established custodial environment may exist in more than one home" and is not dependent on the nature or existence of a custody order. *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018) (quotation marks and citation omitted). Whether a custodial environment is established is "an intense factual inquiry." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001).

Inasmuch as plaintiff argues that defendant had to present clear and convincing evidence regarding the children's best interests because the trial court's order modified the children's established custodial environments, we disagree with the underlying premise that the children's established custodial environments were, in fact, altered by the trial court's order. The trial court found that the children had an established custodial environment with both parents, and plaintiff does not dispute that finding—only the trial court's determination that its newly ordered parenting-time schedule left the joint established custodial environments unchanged. After concluding that the children should remain in Rochester schools, the trial court explained its modification of the parties' parenting-time schedule as "tailored to minimize the amount of change and includes some non-overnight parenting time for Plaintiff during the school week to preserve the relationship she has with the children, but not at the cost of the children having to travel so far to get to and from school during the school week." The court "was mindful that it should not disturb the children's established custodial environment." The trial court did not err in this regard.

Although the time a child spends with each parent commonly affects the established custodial environment, that is not always the case as a matter of law. See, e.g., *Lieberman*, 319 Mich App at 86 n 9 (stating that in cases of joint physical custody, an 85-day reduction in parenting time "would *likely* affect the established custodial environment") (emphasis added); *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) (noting that substantial reduction in parenting time can "potentially" change established custodial environment). The existence of an established custodial environment is always "an intense factual inquiry," *Foskett*, 247 Mich App at 6, that should not be assessed by a blind consideration of the quantity of overnight parenting time.

In this case, while the children spent a large majority of their time with plaintiff, the evidence demonstrated that they routinely looked to both parents for guidance, discipline, the necessities of life, and parental comfort, and could continue to do so under the new parenting-time schedule. The trial court undertook a substantial effort to focus on the nature of the children's relationship with each parent and ensure that the new schedule would facilitate continuation of those relationships.

We also find it noteworthy that plaintiff does not dispute that the children had established custodial environments with both parties under the previous parenting-time order, which involved a nearly identical split of parenting time during the school year, albeit with plaintiff having the majority of the weekday parenting time. Despite spending only every other weekend and every other Thursday evening with defendant, the children transitioned from what was previously a strained relationship with defendant to a healthy one of the sort that results in an established custodial environment. To the credit of both parents, the children had no apparent difficulty communicating with each parent from the other parent's household and did so whenever the need arose. By way of example, when AC faced a bully situation at school, he told both parents about it, specifically taking time to reach out to defendant by phone during plaintiff's parenting time. Similarly, when MC felt unwell and wanted to stay home from school during defendant's parenting time, she reported her illness to both parents. Plaintiff then reminded defendant about the school's sick policy, and defendant took MC to the pediatrician for evaluation. Under these unique circumstances, there is no reason why this open communication and the strong parent-child relationships would be interrupted merely because the trial court effectively reversed the school year parenting-time schedules. The character of the respective relationships could remain intact. Because the children's joint established custodial environments remained the same, the trial court did not have to find clear and convincing evidence that the change in parenting time served the children's best interests. Instead, the decision required only a preponderance of evidence that the change served their best interests. *Lieberman*, 319 Mich App at 84; *Shade*, 291 Mich App at 23.

To the extent that plaintiff argues that the higher evidentiary burden applies solely because the trial court altered the children's physical custody, we again disagree. In *Lieberman*, 319 Mich App at 83-84, this Court's summary of the controlling law stated that "[i]n matters affecting custody, when the child has an established custodial environment with each parent, the movant must prove by clear and convincing evidence that the proposed change is in the best interests of the child." This Court stated the law similarly in *Foskett*, 247 Mich App at 6: "If the trial court finds that an established custodial environment exists, then the trial court can change custody only if the party bearing the burden presents clear and convincing evidence that the change serves the best interests of the child. This higher standard also applies when there is an established custodial environment with both parents." (Citations omitted.) Insofar as these passages suggest that the

existence of an established custodial environment automatically triggers the clear-and-convincing-evidence standard respecting any change in custody, they are incomplete statements of the law.

The plain language of the relevant statute precludes modification of a previous judgment or order "*so as to change the established custodial environment of a child* unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c) (emphasis added). This language unambiguously conditions application of the clear-and-convincing-evidence standard on whether the modification would change the established custodial environment. A long line of cases confirm this understanding. See, e.g., *Brown v Brown*, 332 Mich App 1, 17; 955 NW2d 515 (2020) ("[C]hanging [the] custodial environment [with the plaintiff] by granting defendant sole legal and physical custody of the children requires defendant to prove by clear and convincing evidence that the modification would be in the children's best interests."); *Pennington*, 329 Mich App at 577 ("When modification of a custody order changes to whom the child looks for guidance, discipline, the necessities of life, and parental comfort and support, the movant must demonstrate by clear and convincing evidence that the change is in the child's best interests.") (citations omitted); *Griffin v Griffin*, 323 Mich App 110, 119; 916 NW2d 292 (2018) ("[W]here an established custodial environment does exist, a court is not to change the established custodial environment unless there is presented clear and convincing evidence that it is in the best interest of the child.") (quotation marks and citations omitted); *Phillips v Jordan*, 241 Mich App 17, 25; 614 NW2d 183 (2000) ("[W]hen a modification of custody would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interests.") (citation omitted).

For the reasons already explained, the trial court did not err by concluding that the new parenting-time schedule left the children's joint custodial environments intact. Consequently, the court's conclusion that defendant's proofs did not rise to the level of clear and convincing evidence did not render its decision legally erroneous. The burden of proving that the change served the children's best interests remained with defendant and that burden was by a preponderance of the evidence. *Shade*, 291 Mich App at 23.

## C. BEST-INTEREST FINDINGS

Next, plaintiff challenges the trial court's best-interest findings. We reject plaintiff's arguments and conclude that the trial court's findings were not against the great weight of the evidence.

In articulating this claim of error, plaintiff offers no arguments regarding specific best-interest factors. Instead, plaintiff presents a general argument that all the trial court's findings were against the great weight of the evidence because they were "overshadowed by the trial court's overriding disgust that [plaintiff] had the audacity to get remarried and move 30 miles away."[1] Plaintiff's position completely mischaracterizes the trial court's reasoning. The record indicates that the trial court's analysis of the best-interest factors considered plaintiff's marriage and

---

[1] The trial court cited many other reasons supporting its best-interest findings, but we will focus on plaintiff's marriage and relocation in order to directly respond to her claim of error.

-9-

resulting relocation, but not because the court disapproved of plaintiff's desire to move on with her life. The trial court focused on the manner in which plaintiff disclosed and executed her plans to relocate. The court expressed concern that plaintiff gave insufficient consideration to how her decisions affected the children. These concerns were fully supported by ample evidence.

Plaintiff and her then-boyfriend decided to build a home for their blended family in New Baltimore in October 2020. Plaintiff told the children about the plan shortly thereafter, but she did not disclose the anticipated move to defendant until December 2020, after defendant developed suspicions because the children were inquiring about other school districts and plaintiff's Rochester home had appeared in a marketing e-mail about local real estate listings. Plaintiff's attorney assured defendant that plaintiff would not be moving before 2022. After receiving an unexpectedly high offer on her Rochester home in February 2021, however, plaintiff decided to accept the offer and accelerate the move. In February 2021, the children were informed that they would soon be moving. Plaintiff did not tell defendant about the change in plans until the beginning of March 2021 and she moved with the children less than two weeks later. The children did not have traditional bedrooms but instead used community rooms (a dining room and a den) that were converted into sleeping quarters. Moreover, the March 2021 move to the existing home of plaintiff's fiancé also meant that the children would have to move yet again when the new house was completed around the end of the year.

Even with the benefit of hindsight, plaintiff did not acknowledge that her practice of staged disclosures placed the children in the uncomfortable position of feeling as though they had to keep secrets from defendant. While plaintiff denied that she specifically told the children to withhold information from defendant, she also admitted telling the children "what happens at dad's house is dad's business and what happens at our house is our business," thereby conveying the message to the children to withhold information from their father. Plaintiff also admitted calling MC a "snitch." She could not recall the context of this statement, but other evidence suggested that it occurred after MC "spilled the beans" about the move.

Plaintiff also testified that she was aware all along that she would need approval from the trial court or defendant before transferring the children from Rochester schools to Anchor Bay schools. Yet instead of reassuring the children that their schooling would remain the same until further notice, she promoted Anchor Bay schools to the children and may have provided them "discussion points" about the favorability of that district to discuss in counseling. Plaintiff's approach left the children with uncertainty about what to expect for their schooling and, again, placed them in the middle of what should have been a decision for the parties to make together as joint legal custodians and cooperative coparents.

We have no difficulty agreeing with the trial court's belief that plaintiff's actions, coupled with the bare fact that the children were moved to an unfamiliar town to live with a new blended family,[2] affected the statutory best-interest factors, including plaintiff's ability to give the children

---

[2] Plaintiff argues elsewhere that the trial court's reference to her blended household suggested it was penalizing her for marrying a man with children of his own. Our comment regarding the same

guidance, MCL 722.23(b); the stability of the children's environment and desirability of maintaining continuity, MCL 722.23(d); the permanence of the custodial homes and family unit, MCL 722.23(e); plaintiff's moral fitness as a parent, MCL 722.23(f); and the children's home, school, and community record, MCL 722.23(h).

Plaintiff contends that the trial court's belief that she elevated her own desires over the children's best interests was at odds with the evidence that the children were happy. But happiness does not necessarily equate with what is best for a child. This aspect of plaintiff's argument also fails to appreciate that another driving concern behind the trial court's best-interest analysis was the effect the morning commute had on the children. Defendant and the children's counselor both expressed concern about the exhaustion the children were exhibiting since school resumed and they began commuting from New Baltimore to Rochester on a regular basis. The trial court observed their exhaustion for itself when it interviewed the children on a school day. All modifications of custody and parenting-time order must be made in the best interests of the child, *Shade*, 291 Mich App at 23, and regular exhaustion on school days did not serve these children's best interests.

The only other argument plaintiff presents respecting the trial court's best-interest analysis is that the trial court relied on ex parte communications from the GAL in reaching its decision. We reject plaintiff's evidentiary argument because she clearly waived review of this issue. When the GAL was appointed, plaintiff and her attorney both signed an order unambiguously stating that neither the GAL's recommendations nor any communications to her "by any individual other than the minor child(ren)" would be confidential. That order further dictated that

> [t]he Guardian Ad Litem shall interview the minor child(ren), and shall issue a separate recommendation directly to the Court, which report shall not be available to the parties or counsel. Any and all disclosures made by the minor child(ren) to the Guardian Ad Litem are confidential, and will not be disclosed, except to the Court.

Any uncertainty this order left as to whether the trial court could rely on such confidential reports in deciding the parties' motions was definitively resolved when plaintiff's attorney agreed at the evidentiary hearing to the admission of *all* the GAL's reports and correspondence as joint exhibits. The GAL identified each of those documents on the record, specifically noting that there were two letters regarding interviews with the children that were provided only to the court. In the midst of identifying all of the GAL's communications, plaintiff's attorney said: "Judge, I'm, I'm okay with you seeing everything and anything that you want. I have no objection to anything." Counsel reiterated his agreement when specifically asked about the first confidential communication, and confirmed that there were no other preliminary matters to address after the trial court admitted the second confidential communication as another joint exhibit. "By agreeing to the admission of evidence, a party waives a claim of error regarding the admission of the stipulated evidence on appeal." *In re Gordon Guardianship*, 337 Mich App 316, 320 n 4; 975

point is in no way a "punishment," but rather a recognition of the fact that plaintiff's household lacked a history of "permanence, as a family unit . . . ." MCL 722.23(e).

NW2d 114 (2021) (citation omitted). See also *LeFever*, 336 Mich App at 670 n 3 ("To allow a party to assign error on appeal to something that he or she deemed proper in the lower court would be to permit that party to harbor error as an appellate parachute.") (citation omitted).

## D. CHANGE OF SCHOOLS

Plaintiff also argues that the trial court erred by failing to make specific best-interest findings regarding her motion to change schools and by reaching a decision inconsistent with public policy. We disagree.

Plaintiff takes issue with the trial court's failure to make separate best-interest findings concerning her request to change the children's school. This position is unpersuasive. In *Pierron*, 486 Mich at 91, our Supreme Court held that "when a trial court is considering a decision that will not modify the established custodial environment, such as the change-of-school issue in this case, it must consider the applicability of all the [best-interest] factors." "However, if the trial court determines that a particular factor is irrelevant to the immediate issue, it need not make substantive factual findings concerning the factor beyond this determination, but need merely state that conclusion on the record." *Id.* Plaintiff has not cited any authority suggesting that when a trial court is resolving two motions brought under the Child Custody Act—both of which require analysis of the statutory best-interest factors—it must make separate findings regarding the factors for each motion. Such a rule would be unduly cumbersome, especially in situations where the motions involve overlapping circumstances and evidence, as the case here.

Having reviewed the trial court's lengthy analysis of the best-interest factors, it is apparent that the court made findings regarding plaintiff's request to change schools under the factors it deemed relevant. Under factor (b) (capacity and disposition to provide love, affection, and guidance, and to continue education and raising child in his or her religion or creed), MCL 722.23(b), the trial court found that plaintiff's request to change schools sought to disrupt the children's education without legitimate reasons beyond the obstacles she created by moving, which did not reflect well on her capacity and disposition to guide the children in their education. Under factor (d) (length of time in stable, satisfactory environment, and desirability of maintaining continuity), MCL 722.23(d), the court found that the children had stability in Rochester, where they had always lived and attended school. Under factor (h) (home, school, and community record), MCL 722.23(h), the court noted that plaintiff relied on a slide presentation regarding the Anchor Bay school district, which indicated that it offered a number of advanced placement programs, honors programs, and a "Career Technical Educational" program that would allow MC to explore her interest in a child care or an educational career path. The record reflects that other evidence established that MC was shy by nature and slow to make friends, and both children were performing well, without disciplinary issues, in their Rochester schools. The court rejected plaintiff's suggestion that the career program in Anchor Bay provided a good reason to change schools, reasoning that MC could obtain comparable experience by way of part-time employment in Rochester. Nor was the Anchor Bay swim program a persuasive reason to transfer schools, especially when plaintiff had never explored the availability of a swim program in Rochester.

Under the "school enrollment" heading of the court's order, it summarized its view of the foregoing as follows:

The only reason the matter is being addressed is because Plaintiff unilaterally moved the children to a new home. The Court has reviewed the evidence presented and is not persuaded that there is any reason to uproot the children from Rochester, where they have grown up, to attend a new school. Plaintiff is aware that this could have been an outcome as she was denied a similar request when she merely wanted to move the children to a different school in the same district. The Court is dismayed that Plaintiff placed the children in a state of uncertainty before she made any request of the Court, let alone told Defendant.

The preponderance of evidence standard is "simply that evidence which outweighs that which is offered to oppose it." *Martucci v Ballenger*, 322 Mich 270, 274; 33 NW2d 789 (1948), quoting *Strand v Chicago & WM Ry Co*, 67 Mich 380; 34 NW 712 (1887). Essentially, the standard is that the scale tips to one side more than the other.

To carry Plaintiffs burden, she needed to tip the scale in her favor. Plaintiff's evidence is summed up as her own self-centered decision making, an ill-conceived and poorly executed plan, and a swim team. Plaintiffs evidence falls far short of meeting her burden. The Court finds that the children shall remain . . . enrolled in the Rochester Community School District.

While we agree that the foregoing summary would be inadequate on its own, viewed in the context of the court's detailed analysis of the best-interest factors, the court did not err by declining to provide a duplicative assessment of the statutory factors focused only on the proposed change of schools.

Plaintiff further argues that the trial court's denial of her motion, and reasons for doing so, are contrary to public policy favoring marriage and preservation of the family unit. Her general policy arguments, however, cannot overcome binding caselaw interpreting the Child Custody Act. When parents are unable to agree on important decisions, "such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child." *Pierron*, 486 Mich at 85. The trial court endeavored to do that in this case, and plaintiff has not established error requiring reversal.

Plaintiff also asks this Court to order assignment of a new judge for further proceedings on remand. Because we find no error requiring reversal we have no reason to remand for further proceedings; therefore, we need not consider whether a new judge should be assigned. *Cassidy v Cassidy*, 318 Mich App 463, 510; 899 NW2d 65 (2017).

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ James Robert Redford

-13-