*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATE LISA MCCLOUD,

        Plaintiff-Appellee,

v

DAVID LEON MCCLOUD,

        Defendant-Appellant.

UNPUBLISHED
July 20, 2023

No. 364877
Houghton Circuit Court
Family Division
LC No. 2021-017695-DM

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant, David McCloud, appeals as of right the trial court order granting plaintiff, Kate McCloud, sole legal and primary physical custody of their minor child, OM. For the reasons stated in this opinion, we vacate the trial court's grant of sole legal and primary physical custody and remand for a new custody hearing.

## I. BASIC FACTS

The parties married in December 2008. OM is their only child. In August 2021, Kate filed a complaint for divorce. Initially, the trial court entered a temporary custody and parenting time order indicating that, after participating in the Friend of the Court's alternative dispute resolution process, the parties had stipulated to joint legal and physical custody.

Subsequently, in November 2022, the court held a bench trial to resolve the issues of custody, support, and parenting time. At that time Kate requested that she receive primary physical custody and that David be awarded limited, supervised visitation. She testified that, at the time that she had stipulated to 50/50 custody and parenting time, the parties were still living together. They had since separated. She also testified that supervised parenting time was appropriate because David was an admitted "sex addict." He had been arrested for soliciting a prostitute in Minnesota in 2014, and had pleaded guilty to a lesser charge. Additionally, he admitted to having at least 20 extramarital affairs and to attending sex addicts anonymous. At trial, David stated that he was a "sex addict," and he described the nature of his addiction as being about finding partners online. He stated that he never had any "indication . . towards minors or children of any nature."

-1-

In addition to David's "sex addiction," Kate also testified that she had realized that there had "been a lot of manipulation, abuse, and controlling going on throughout the marriage." She described several incidents of physical and emotional abuse and damage to her property. Specifically, she testified that David (1) stole her "bike computer" that she used for work, (2) put a staple through her bike tire, (3) let the air out of her car tires, (4) destroyed sentimental items like her "baby books and awards," (5) destroyed OM's baptism certificate, (6) glazed the brake pads on her bike so that they would not grip, (7) put "something that smelled really foul onto [her] bedsheets" at least three times, (8) urinated on her bath towel and used it to clean the toilets before hanging it back up for her to use, (9) put vinegar in her Gatorade bottle, (10) made her a smoothie of ingredients that she was allergic to, (11) deactivated her debit cards so she could not pay for things, (12) changed her mailing address so he could take a check she requested from her bank, (13) refused to allow her a key to their home, and (14) sabotaged the garage door so that it would not shut. Additionally, a friend of Kate's testified that she saw David splash the contents of a water bottle in Kate's face at a race. Kate also testified that David would routinely tell her that he was smarter and stronger than she was, and he also referred to her—and encouraged OM to refer to her—using a derogatory nickname. Kate also recounted that David texted her that he and OM had purchased a gun at a gun show, which she felt was a threat to her and OM's safety. Kate also stated that there was an incident of domestic violence in August 2018. She testified that David pinned her to the wall in the bedroom and choked her so she could not breathe.

David admitted to some of the incidents that could be corroborated by evidence beyond Kate's testimony. In particular, he conceded that he had put vinegar in her Gatorade bottle, bought a gun, shut off her debit cards, and called her a derogatory nickname. David stated that he did not purchase the gun to intimidate her. He also explained that he told Kate that he was smarter, stronger, and more capable than her. He stated that it was not "a mention of any of her capabilities." Instead, it was "just simply the fact" that he believed in himself. David admitted to choking Kate in August 2018, but minimized his culpability. In his version of the incident, Kate annoyed him by waking him up at a time when he was not sleeping well and when he was working a very stressful job. He was groggy and went to push her out of the way, but "accidently got her by the throat" and choked her for a few seconds. He denied urinating on her towel, putting smelly substances on her bedsheets, redirecting her mail to steal a check, letting the air out from her tire, sabotaging the garage door, tampering with her brakes, and keeping the house keys from her.

Following the divorce trial, the court awarded Kate sole legal custody and primary physical custody of OM. This appeal follows.

## II. CUSTODY

### A. STANDARD OF REVIEW

In a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Accordingly, there are three standards of review in custody cases. *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021). A trial court's factual findings are reviewed under the great-weight-of-the-evidence standard. *Id*. A factual finding is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Id*. at 645. A trial court's

discretionary rulings are reviewed for an abuse of discretion. *Id*. An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Id*. Questions of law are reviewed for clear legal error. *Id*. Clear legal error exists when the trial court incorrectly chooses, interprets, or applies the law. *Id*. "This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments." *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020).

## B. ANALYSIS

### 1. LEGAL CUSTODY

In Michigan, the Child Custody Act, MCL 722.21 *et seq*., governs the issue of child custody. According to MCL 722.26a(1), in custody disputes between parents, the parents *shall* be advised of joint custody, and, "[a]t the request of either parent, the court *shall* consider an award of joint custody, and *shall* state on the record the reasons for granting or denying a request." (Emphasis added.)

> "[J]oint custody" means an order of the court in which 1 or both of the following is specified:
>
> (a) That the child shall reside alternately for specific periods with each of the parents.
>
> (b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. [MCL 722.26a(7).]

When a court considers a request for joint custody, it

> *shall* determine whether joint custody is in the best interest of the child by considering the following factors:
>
> (a) The factors enumerated in [MCL 722.23].
>
> (b) Whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child. [MCL 722.26a(1) (emphasis added).]

"[T]he family court must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them." *McRoberts v Ferguson*, 322 Mich App 125, 134; 910 NW2d 721 (2017). "The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001). Furthermore, regarding MCL 722.26a(1)(b), this Court has stated:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate

with each other in joint decision-making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [*Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020) (quotation marks and citation omitted).]

On appeal, David argues that the trial court "failed to make reviewable findings of fact on the majority of the best interest factors" because the court did not provide a factual explanation as to why it ruled as it did on each factor. However, the trial court found that factors (a), (b), (d), and (f) favored Kate, and factors (c), (g), (h), and (j) were equal as to both parties. The trial court was only required to explicitly state its findings; it was not required to discuss the testimony or provide a factual explanation. See *Foskett*, 247 Mich App at 12.

Nonetheless, the trial court committed clear legal error by failing to consider factors (e) and (*l*). Even if the court found that factors (e) and (*l*) were irrelevant, the court must at least state that conclusion on the record. See *Pierron v Pierron*, 486 Mich 81, 91; 782 NW2d 480 (2010). Because the trial court failed to consider custody issues in accordance with MCL 722.23 and make reviewable findings of fact for all factors, the proper remedy is to remand for a new child custody hearing. See *Foskett*, 247 Mich App at 12. On remand, the trial court shall consider each of the child custody factors and state its findings as to each factor.

David also argues that the trial court committed clear legal error because it failed to interview OM, who was of suitable age to express a preference. MCL 722.23(*i*) mandates that the court should consider "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." Here, the trial court erred because it made no findings regarding whether OM was capable of expressing a reasonable preference. Instead, the court declined to consider OM's preference, stating, "I have not interviewed the child and I have not been asked to interview the child." It appears that the court implicitly determined that the parties stipulated that the court could decline to consider MCL 722.23(i). However, in *Kubicki v Sharpe*, 306 Mich App 525, 544-545; 858 NW2d 57 (2014), this Court explained that "[r]egardless whether the parties wished for an interview, the court was affirmatively required to consider the child's preference."

On appeal, David suggests that the trial court was required to interview OM because he was ten years old and was presumptively able to express a reasonable preference. MCL 722.23(i), however, does not require that the court interview the child to ascertain the child's reasonable preference. Indeed, as clarified in *Maier v Maier*, 311 Mich App 218, 224; 874 NW2d 725 (2015), "*Kubicki* did not announce a new legal mandate that every child over a certain age be interviewed to ascertain a reasonable preference." The *Maier* Court explained that the "right to have a reasonable preference considered attaches to the best interests of the child, not to the rights of the contestants in the custody battle." *Id*. MCL 722.23(i) only requires the court to consider "the reasonable preference of the child, *if one exists*." *Maier*, 311 Mich App at 224 (emphasis added). "Reasonable preference" is a standard that excludes "those preferences that are arbitrary or inherently indefensible." *Pierron v Pierron*, 282 Mich App 222, 259; 765 NW2d 345 (2009). When evaluating whether the child formed a reasonable preference, the trial court should consider whether the child is of sufficient age to form a preference and whether the child's capacity to give

his or her preference is compromised by infirmity, disability, or other circumstances. *Maier*, 311 Mich App at 225. Again, interviewing the child is only one method by which the court can determine whether the child has a reasonable preference. *Id*. Other methods include obtaining information from mental-health professionals and considering interviews of the child conducted by others, such as the Friend of the Court. *Id*. The court may also consider the child's emotional state and whether efforts have been made to influence the child's preference. *Id*. at 225-226. Efforts to influence the child include coaching and the effect of a parent voicing criticisms and concerns about the other parent in the child's presence. *Id*. at 226. On remand, therefore, the trial court must consider whether OM is capable of expressing a reasonable preference. In doing so the court may, but is not required to, interview OM to ascertain whether he has a reasonable preference.

Next, David argues that the trial court committed clear legal error to the extent that the trial court relied on his "infidelity" to determine his credibility. We disagree. A trial court cannot use infidelity to measure a parent's moral fitness under factors (d), (e), and (f), unless the infidelity interferes with the parent's ability to parent his or her child. See *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994) (holding that "[b]ecause of its limited probative value and the significant potential for prejudicially ascribing disproportionate weight to that fact, extramarital conduct, in and of itself, may not be relevant to factor f"); *Bofysil*, 332 Mich App at 247 (holding that it was improper for a court to consider a party's infidelity in analyzing factors (d) and (e)). However, the trial court did not find David's infidelity to be relevant to any particular factor. Rather, the court considered David's infidelity when evaluating David's overall credibility. It found that David was "untruthful because he admittedly committed adultery over 20 times during the course of the marriage." Thereafter, the court found that David "committed at least one known act of sabotage and that was vinegar in his wife's water bottle at the cycle race." The court found that his act was "particularly distasteful, deceitful, despicable, and on the order of an assault." Further, the court found credible Kate's description of the choking incident in the bedroom. Thus, in context, it is clear that the finding of infidelity was related to David's credibility overall and was not the only basis for measuring David's moral fitness under factors (d) and (f). We give special deference to the trial court's credibility assessments. See *Brown*, 332 Mich App at 9. It was not clear legal error for the trial court to consider David's infidelity when assessing his credibility.

David also argues that there is no evidence that the trial court considered whether the parties had the ability to generally cooperate and agree prior to awarding Kate sole legal custody of OM. Because the record reflects that the trial court did not address this factor as required by MCL 722.26a(1)(b), we vacate the court's order of sole legal custody and remand for further proceedings. On remand, the trial court must make appropriate findings under MCL 722.26a(1)(b).

Lastly, David requests that we remand the case to a different judge. He argues that the trial judge in this case was clearly unable to objectively weigh and consider the evidence, as demonstrated by his expressed statements regarding David's credibility and conduct throughout the marriage. Yet, the trial court judge was responsible for assessing credibility as the finder of fact. And although the trial court failed to make a number of required findings in this case, the findings that it did make were not clearly erroneous. Moreover, erroneous rulings are not a basis for disqualification. See *Kuebler v Kuebler*, ___ Mich App ___, ____; ____ NW2d ___ (2023) (Docket No. 362488); slip op at 31. Reassignment is not warranted.

## III. CONCLUSION

The trial court committed clear legal error by failing to consider all of the factors delineated in MCL 722.23, by failing to properly consider factor (i), and by failing to make the required findings under MCL 722.26a(1)(b). Accordingly, we vacate the award of sole legal and primary physical custody and remand for further proceedings consistent with this opinion. On remand, the trial court must analyze the considerations outlined in MCL 722.26a(1) and all the best-interest factors delineated under MCL 722.23, and the court must rearticulate and explain its reasons for granting or denying David's requests for joint physical and joint legal custody.

Vacated in part and remanded for further proceedings. We do not retain jurisdiction. David may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford

-6-