*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACLYN MARIE WIELAND,

        Plaintiff-Appellant,

v

JACOB ALLEN SWISHER,

        Defendant-Appellee.

UNPUBLISHED
July 08, 2025
9:44 AM

No. 372010
Kalkaska Circuit Court
LC No. 2017-012517-DS

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order awarding sole legal and physical custody of the parties' child, JCS, to defendant and holding plaintiff in contempt for violating several of the trial court's earlier orders. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After JCS was born, the parties had a mutually antagonistic on-again-off-again relationship. JCS witnessed some of the parties' arguments. The parties ultimately entered into a consent judgment providing for joint custody and equal parenting time.

After the consent judgment was entered, plaintiff displayed a pattern of intentionally excluding defendant from JCS's life. She took JCS to California more than once, contrary to the consent judgment, and made numerous unsubstantiated allegations of sexual and physical abuse by defendant against both herself and JCS. JCS was forensically interviewed multiple times, and had *in camera* interviews with the trial court. Several investigators, and the trial court, believed that, as a result of these interviews, that plaintiff was coaching JCS to keep her away from defendant. The trial court noted that, although JCS stated she was afraid of defendant and wanted to remain with plaintiff, "her language was simply a reflection of what the Plaintiff [was] requesting, which [was] to have the Defendant out of the picture and out of the minor child's life."

-1-

## II. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff argues that, because an established custodial environment existed with her alone, the trial court erred in finding that JCS had an established custodial environment with both parents. Even if the trial court's finding was erroneous, any such error would be harmless. Thus, plaintiff's argument fails.

"When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Stoudemire v Thomas*, 344 Mich App 34, 43; 999 NW2d 43 (2022) (quotation marks and citation omitted).[1] "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." *Id*., quoting MCL 722.27(1)(c).

> Whether an established custodial environment exists is critical. If an established custodial environment exists and the proposed change would alter that custodial environment, the moving party "must demonstrate by clear and convincing evidence that the change is in the child's best interests." However, if no custodial environment exists, a prior custody order may be altered merely on the basis of a preponderance of the evidence that doing so would be in the child's best interests. [*Stoudemire*, 344 Mich App at 48 (citations omitted).]

There is no dispute that JCS had, at a minimum, an established custodial environment with plaintiff. Thus, the trial court held defendant to the correct clear-and-convincing-evidence standard in granting defendant's motion to modify custody. *Id*. While it is true that plaintiff also moved for a change in custody, our initial focus is on whether the trial court's ruling on *defendant's* motion applied the correct standard. It did. Notwithstanding this, plaintiff's argument focuses on how the trial court's alleged error affected the standard to which she was held for pursuing her own motion to change custody and parenting time. But plaintiff fails to explain how this lower standard would change the outcome of the case overall. The trial court found, under the correct standard, that defendant was entitled to sole legal and physical custody of JCS. The standard to which plaintiff was held is irrelevant to the trial court's finding in this respect. Thus, even if the trial court erred in finding that JCS had an established custodial environment with both parties, any such error was harmless as to its ultimate decision.

## III. BEST INTEREST FACTORS & SOLE CUSTODY

Plaintiff next argues the trial court erred because the evidence clearly preponderates against most of the trial court's factual findings as to JCS's best interests. We disagree as to all but one factor, which was harmless in relation to the trial court's overall determination that sole custody with defendant was in JCS's best interests.

---

[1] A party seeking to modify custody or parenting time must also establish a change of circumstances. *Stoudemire*, 344 Mich App at 44. Neither party argues that there was not a change of circumstances.

## A. STANDARDS OF REVIEW

In child custody cases, the trial court's factual findings are reviewed under the great-weight-of-the-evidence standard and must be affirmed unless the evidence clearly preponderates against them. *Stoudemire*, 344 Mich App at 42. "In reviewing the trial court's factual findings, we defer to the trial court's credibility determinations." *Safdar v Aziz*, 342 Mich App 165, 176; 992 NW2d 913 (2022). The trial court's ultimate custody decision is reviewed for an abuse of discretion; this occurs when "the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Stoudemire*, 344 Mich App at 42-43 (quotation marks and citation omitted). A trial court's erroneous finding under a single best-interest factor can be harmless if the remaining factors support the trial court's ultimate custody decision. *Brown v Brown*, 332 Mich App 1, 26; 955 NW2d 515 (2020).

## B. BEST INTEREST FACTORS

"To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23 and to apply the appropriate standard of proof." *Kuebler v Kuebler*, 346 Mich App 633, 671; 13 NW3d 339 (2023). These factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

> (h) The home, school, and community record of the child.

> (*i*) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

"A trial court must consider and explicitly state its findings and conclusions with respect to each of these factors." *Id*. (quotation marks and citation omitted). But, while the trial court must make enough of a record "for this Court to determine whether the evidence clearly preponderates against the trial court's findings," it does not need to comment on "every piece of evidence entered and argument raised by the parties." *Safdar*, 342 Mich App at 185-186. "The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001).

## 1. FACTOR (B)

Plaintiff first challenges the trial court's finding that Factor (b)'s considerations weighed in favor of defendant.[2] As noted, Factor (b) concerns "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court reasoned that plaintiff's ability to provide appropriate guidance was questionable in light of her coaching JCS, making false accusations against defendant, and discussing sensitive issues in front of JCS. It also considered the fact that plaintiff made changes to JCS's education and pursued baptizing JCS without defendant's notice or consent. By contrast, the trial court found defendant was actively involved in providing JCS with love, affection, and guidance—at least until plaintiff interfered with his parenting time. It further found that defendant's testimony was credible and that there was no evidence that JCS had not been properly cared for when in defendant's care.

Plaintiff argues the trial court failed to appreciate that defendant was "not actively involved" in JCS's life even before she limited his involvement. However, plaintiff conceded during an evidentiary hearing that, although she believed JCS looked more to her, both parents had the ability to love and care for JCS. Indeed, the record reflects that, before plaintiff's interference, defendant helped JCS with homework; attended parent-teacher conferences, her kindergarten graduation, and medical appointments when work permitted; and comforted JCS when she was injured. By contrast, JCS was seriously injured by a dog while in plaintiff's care, and was exposed

---

[2] Plaintiff does not challenge the trial court's findings that the parties were equal under Factors (a), (g), and (*i*).

to heated arguments between plaintiff and plaintiff's father. Consistent with our deference to the trial court's credibility determinations, *Safdar*, 342 Mich App at 176, as well as the evidence in the record, we conclude that the evidence does not clearly preponderate against the trial court's findings as to Factor (b).

## 2. FACTOR (C)

Factor (c) concerns "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found this factor favored defendant, reasoning that, although both parties could provide for JCS's material needs, defendant maintained stable employment and had an appropriate home for JCS, while plaintiff relied substantially on the assistance of others to provide for JCS. Further, plaintiff wrongly withheld information from defendant and made medical decisions for JCS without defendant's knowledge or consent.

Plaintiff argues that, contrary to *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008), the trial court based its finding that Factor (c) favored defendant simply because he earned more money than plaintiff. Plaintiff's argument oversimplifies *Berger* and the trial court's findings. *Berger* provides: "Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' *capacity* and *disposition* to provide for the [child's] material and medical needs" by "look[ing] to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income." *Id*. The trial court's consideration of defendant's past and present employment and his role as the family's wage-earner was entirely appropriate and part of its consideration of his capacity to do so in the future. It contrasted defendant's economic stability with the unanswered question of whether plaintiff would ever be able to provide for JCS without assistance from others. Given these considerations, the evidence does not clearly preponderate against the trial court's findings as to Factor (c).

## 3. FACTORS (D) AND (E)

Like the parties, we will address Factors (d) and (e) together. Factor (d) concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Factor (e) concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found Factor (d) favored defendant. It noted that, while he had moved twice, defendant recently purchased his own home which was appropriate and suitable for JCS, while plaintiff provided no evidence about her current living situation. The trial court found Factor (e) also favored defendant, because plaintiff relied on her father for support and provided little testimony about her current circumstances. On the other hand, defendant's home environment was well known. He purchased a new home in which JCS had her own bedroom.

"Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). The environment's suitability is an appropriate consideration under Factor (d). *Brown*, 332 Mich App at 20-21. On the other hand,

Factor (e) "concerns the *permanence* of the household, not its acceptability." *Kuebler*, 346 Mich App at 683.

In a prior custody order, the trial court weighed Factors (d) and (e) equally between the parties. At that time, plaintiff had lived in her home for only two months, and its permanence was unknown. Additionally, the trial court reasoned that plaintiff's moves to and from California undermined the stability of JCS's environment. When addressing these factors again over a year later, the trial court expressed its concern over the lack of evidence that anything had changed in plaintiff's environment since the prior order. The absence of updated information, along with the fact that plaintiff and her father got into yelling matches in front of JCS, and that JCS was attacked and seriously injured by a dog in the home that plaintiff knew was aggressive, supports the trial court's finding that plaintiff's home was unsuitable under Factor (d). The evidence also does not clearly preponderate against a finding that JCS could have a suitable living environment with defendant, even despite the lengthy separation, because JCS had her own room at his house and Children's Protective Services (CPS) deemed the home appropriate.

However, the trial court erred in using these facts to support its finding that Factor (e) favored defendant. Again, Factor (e) "concerns the *permanence* of the household, not its acceptability." *Kuebler*, 346 Mich App at 683. While plaintiff did not provide the trial court with updated information about her housing situation, the record reflects that JCS had lived with plaintiff in the same place for more than a year. This is in contrast to defendant, who had recently moved, and JCS had never lived in his new home. Therefore, JCS had more *permanence* with plaintiff. Nevertheless, any error in this respect is harmless, because the trial court's other findings regarding the other contested factors supported its overall best-interests conclusion. See *Brown*, 332 Mich App at 26 (holding the trial court's erroneous finding as to Factor (e) was harmless "because in all other respects the remaining best-interest factors overwhelmingly supported [the] defendant's motion for change of custody.").

## 4. FACTOR (F)

Factor (f) concerns "[t]he moral fitness of the parties involved." MCL 722.23(f). The trial court found that this factor favored defendant because plaintiff persistently leveled accusations against him that ranged from implausible to impossible, and that were often unreasonable. Plaintiff argues the trial court erred by failing to comment on her fitness as a parent and treating her like an inferior parent on the basis of its disapproval of her allegations against defendant. Plaintiff likens her situation to that in *Fletcher v Fletcher*, 447 Mich 871, 885-886; 526 NW2d 889 (1994), in which a trial court improperly considered a party's cohabitation with someone outside of marriage as indicative of their moral inferiority. Plaintiff's analogy is inapt. Factor (f) focuses on "conduct that necessarily has a significant influence on how one will function *as a parent*[,]" and not a consideration of "who is the morally superior adult[.]" *Id*. at 887. In *Fletcher*, the trial court improperly considered unmarried cohabitation and extramarital affairs; the same considerations are not present here. In this case, the trial court found that JCS was inappropriately aware of the court proceedings and allegations, and that plaintiff was coaching JCS to the point that she was unable to articulate her own wishes. Plaintiff's accusations subjected JCS to multiple examinations and interviews, and much of JCS's anxiety was because of the ongoing strife between the parties, which the trial court attributed primarily to plaintiff's behavior. Plaintiff's

conduct in this case *was* affecting her parenting ability and was directly harming JCS. Thus, the evidence does not clearly preponderate against the trial court's findings under Factor (f).[3]

## 5. FACTOR (H)

Factor (h) considers "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court found that this factor favored defendant, because JCS did not have much of a school or community record, plaintiff made numerous changes to her schooling without consulting defendant or listing defendant as a contact person, plaintiff's changes undermined the stability of JCS's schooling and education, and plaintiff had not provided any documentary evidence supporting her contention that JCS was doing well in her online school.

Plaintiff argues that defendant was never involved in JCS's schooling, and that she gave him the opportunity to be involved but he chose not to. While plaintiff's testimony supports her argument, other evidence indicates that defendant's lack of involvement was attributable to him working to support the family or plaintiff isolating him from school-related decisions. The trial court found defendant to be much more credible than plaintiff, and there is no evidence suggesting this Court should stray from its deference to the trial court's credibility determination. *Safdar*, 342 Mich App at 176. Hence, we conclude that the evidence does not clearly preponderate against the trial court's finding that Factor (h) favored defendant.

## 6. FACTOR (J)

Factor (j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that this factor favored defendant, because he was willing to encourage and facilitate parenting time between JCS and plaintiff, while plaintiff had a history of threatening defendant and manipulating JCS in order to cut defendant out of JCS's life entirely.

Plaintiff argues the trial court ignored the second sentence of MCL 722.23(j), which provides that "[a] court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." Plaintiff contends that her allegations could not be used against her because she was trying to protect JCS from defendant. While the trial court did not expressly discuss the second sentence of MCL 722.23(j), it extensively discussed plaintiff's conduct, which

---

[3] Plaintiff argues the trial court did not make explicit findings on the record as to her parental fitness. But, again, while the trial court must make enough of a record "for this Court to determine whether the evidence clearly preponderates against the trial court's findings," it does not need to comment on "every piece of evidence entered and argument raised by the parties." *Safdar*, 342 Mich App at 185-186. "The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett*, 247 Mich App at 12. The trial court's opinion, read as a whole, is sufficiently detailed for this Court's review.

consisted of threatening defendant, apparently seeking vengeance against defendant for dating a new partner, deliberately misinforming defendant, making false allegations against defendant, and harming JCS. It found that many of plaintiff's accusations were not merely unfounded but impossible. The trial court's opinion, as a whole, shows it found that plaintiff's conduct was not a reasonable action intended to protect JCS. Plaintiff relies on unpublished caselaw[4] to argue that she should not be punished for acting on her sincere beliefs, even if they were mistaken, but she ignores the fact that the trial court found that her beliefs were not sincere. The evidence therefore does not clearly preponderate against the trial court's finding that Factor (j) favored defendant.

### 7. FACTOR (K)

Factor (k) considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The trial court found that this factor favored defendant. While there had been no reports of domestic violence between the parties since the trial court's prior order, plaintiff admitted that the police were called because of a heated argument between herself and her father outside their residence while JCS was inside, and defendant observed a screaming match between plaintiff and her father outside their car while JCS was inside. By contrast, there were no reports of domestic violence in defendant's home.

Plaintiff argues the trial court erred because her two heated arguments with her father were insufficiently violent to constitute "domestic violence" under Factor (k). In support of this argument, plaintiff cites this Court's discussion in *Brown*, 332 Mich App at 11-12, which addressed the definition of "domestic violence" under MCL 722.23(k) in terms of physical violence. However, *Brown* also held that "domestic violence" under MCL 722.23(k) included "domestic violence" as defined in MCL 400.1501. *Brown*, 332 Mich App at 12. We note that MCL 400.1501(d) contemplates both physical and mental harm. Thus, domestic violence, as contemplated by MCL 722.23(k), is not necessarily limited to physical violence. In light of the evidence that JCS was anxious and possibly suffered post-traumatic stress disorder because of the parties' fighting and having witnessed their arguments, the trial court properly considered the loud arguments between plaintiff and her father under Factor (k).

Plaintiff also argues the trial court failed to consider defendant's prior acts of domestic violence. The trial court did consider these acts in its prior order, but ultimately found that "both parties demonstrate[d] aggression and rage toward each other during these domestic confrontations," and that they were equally blameworthy under Factor (k). Implicit in the trial court's findings is that plaintiff continued the same pattern of conduct while defendant did not. It noted that defendant "was always in good standing while on probation" and that there had been no reports of domestic violence in defendant's home. Thus, the evidence does not clearly preponderate against the trial court's finding that Factor (k) favored defendant.

---

[4] Unpublished cases are not binding, but they may be considered instructive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, 345 Mich App 649, 665-666; 9 NW3d 104 (2023).

## 8. FACTOR (L)

Factor (*l*) considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). The trial court found that this factor favored defendant, citing the numerous investigations that plaintiff instigated, none of which were substantiated, as well as plaintiff's propensity for having inappropriate discussions in front of JCS. Plaintiff argues that the trial court erred, claiming that the trial court was "simply reiterating the many findings and its disapproval of [plaintiff] under this factor[.]" Plaintiff contends that, just because the allegations were unsubstantiated and she "may have discussed some of those allegations in JCS'[s] presence" did not mean she was coaching JCS or alienating her from defendant. However, the trial court already ruled that defendant was more credible than plaintiff and found that JCS had been coached after interviewing her *in camera*. Plaintiff is essentially asking this court to again ignore our deference to the trial court's credibility determinations and reweigh the evidence. *Safdar*, 342 Mich App at 176. We decline to do so. The trial court's assessments are supported by the evidence, and this Court may not interfere with them. Thus, the evidence does not clearly preponderate against the trial court's finding that Factor (*l*) favored defendant.

## C. SOLE LEGAL CUSTODY

"Pursuant to MCL 722.26a(1)(b), in determining whether joint legal custody is in the best interests of the child, the court must consider whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." *Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020) (quotation marks, brackets, and citation omitted). Sole legal custody is proper if one parent "has demonstrated that she is both unwilling and unable to communicate and cooperate with [the other parent] in a manner that is in the children's best interests." *Butler v Simmons-Butler*, 308 Mich App 195, 201; 863 NW2d 677 (2014) (quotation marks omitted).

Plaintiff challenges the trial court's ruling because it did not "clearly articulate that the parties could not generally cooperate and agree such that sole legal custody was appropriate." But the trial court's order clearly noted that the consideration of whether awarding sole or joint legal custody was in the best interests of a child includes "the statutory best interest factors and whether the parents [would] be able to cooperate and generally agree concerning important decision[s] affecting the welfare of the child." It further recognized that, "[i]f the parents cannot agree on essential decisions, sole legal custody should be awarded." It then discussed plaintiff's repeated exclusion of defendant from participating in, and making decisions regarding, JCS's life, including situations involving JCS's education, medical treatment, and religion. Thus, the trial court did "clearly articulate" that sole legal custody was appropriate on the basis of the best-interest factors and its finding that plaintiff could or would not cooperate with defendant in making decisions about JCS's welfare. The evidence does not clearly preponderate against this finding.

## IV. CONTEMPT

Plaintiff finally argues that the trial court abused its discretion by holding her in contempt for violating its orders, asserting she was incapable of complying with them. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews a trial court's decision to hold a party in contempt for an abuse of discretion. *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 665; 997 NW2d 511 (2022). "[T]he default abuse-of-discretion standard recognizes that there may not be a single correct outcome, and if the trial court selects a reasonable and principled outcome, this Court must defer to the trial court's judgment." *Id*. at 665-666 (quotation marks and citation omitted). "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *Id*. at 666 (quotation marks and citation omitted). "This Court may not weigh the evidence or the credibility of the witnesses and may find clear error only if it is left with the definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Plaintiff argues she could not comply with the trial court's order because JCS refused to attend parenting time, and plaintiff "could not have more forcefully attempted to drive JCS to attend parenting time" with defendant. Plaintiff supports her argument by citing *McBride v Mathews*, unpublished per curiam opinion of the Court of Appeals, issued March 2, 2023 (Docket No. 361317), p 5, in which this Court held that a mother's "failure to more forcefully compel her daughter to return to her father's home[]" was not contemptuous because the child refused to do so. In *McBride*, the record demonstrated that the father's wife spanked the child, and that "the child claimed to be in pain several hours later." *Id*. This Court reasoned that the evidence supported the fact that the "mother found herself in an emotionally fraught situation, forced to choose between compelling her unwilling 12-year-old daughter to a place where she had been physically punished, and allowing the child to remain in a place where she felt safe." *Id*. Not only is *McBride* is not binding authority, *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 319 (2017), plaintiff's situation is very different than the circumstances presented in *McBride*.

Plaintiff focuses on a parenting time exchange in which JCS refused to exit plaintiff's car and ended up hurting her arm in an apparent struggle with the adults to forcibly remove her. However, plaintiff ignores another parenting time exchange in which JCS did not refuse to go to defendant, but plaintiff nonetheless refused to give JCS to defendant and drove away. Plaintiff's allegations of abuse against defendant were all unsubstantiated, unlike the spanking in *McBride*. Additionally, the trial court found that JCS's refusal to be with defendant was not an expression of her own free will, but rather a symptom of plaintiff's coaching and control. Ultimately, the trial court found that JCS resisted going with defendant because plaintiff induced her to resist. The impossibility plaintiff cites as the basis for her violation of the trial court's orders was one of her own making, and, according to the trial court, was created in an effort to cut defendant out of JCS's life.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-10-